[S. F. No. 5670.   In Bank.—January 15, 1913.]

M. C. McCLUNG, Respondent, v. PARADISE GOLD MINING COMPANY, Appellant.

Miner's Lien—Work on Mining Claim—Claim of Lien—Nature of Work.—Under section 1187 of the Code of Civil Procedure, a claim of lien for labor performed on mining property need not state the particular character of the labor done, although in an action to enforce the lien, the claimant must show by his proof that his labor was of such kind as is made lienable by section 1183 of that code, that is, that it was development work or mining by the subtractive process.

Id.—Contract Authorizing Working of Mine—Accounting of Profits —Notice of Intention to Do Work.—A contract by a hydraulic mining corporation, whereby it gave a third person an option to purchase a block of its shares, and authorized him to enter upon its mining property and repair the company's flume, and to prospect and examine its mines, accounting to the company for a portion of the gold extracted, is sufficient to put the officers of the corporation on notice that he intended to go to the mine to carry out its objects.

ID.—AGENT OF CORPORATION—DEVELOPMENT WORK ON MINE—WORK BY SUBTRACTIVE PROCESS.—The holder of such option, in performing the work contemplated by the contract on such mining property, was the agent of the owner, within the meaning of the Mechanics' Lien Law, (Code Civ. Proc., sec. 1183), and the work done by him in repairing such flume and in extracting minerals, was "development work," and work by the "subtractive process."

ID.—CONSTRUCTION OF FLUME FOR HYDRAULIC MINE.—The construction of a flume and the bringing of water to a hydraulic mine, for the sole purpose of working it by the only way that it could be worked, is development work.

ID.—ASSIGNMENT OF CLAIMS OF LIEN—ASSIGNMENT PRIOR TO RECORDATION.—Where the claims of liens of persons doing work on such mining property were executed in the individual names of the claimants, and were so recorded, an assignment thereof, although it was executed prior to the recordation of the claims, authorizes the assignee to maintain an action in his own name to foreclose the liens, if by its terms it was not to take effect until after the recordation of the claims.

ID.—ASSIGNEE AGENT OF CLAIMANTS TO RECORD CLAIMS.—Such claimants, after the execution of the assignment, could delegate to the assignee, as their agent, the power to file the claims in their behalf with the county recorder.

APPEAL from a judgment of the Superior Court of Fresno County.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

L. L. Cory, Carrier & Richards, and Canfield & Starbuck, for Appellant.

George Cosgrove, for Respondent.

THE COURT.—This case was decided by the district court of the third appellate district.   That court sustained the judgment upon plaintiff's individual claim and that against defendant Lyall, who does not appeal, but reversed the judgment as to those claims assigned to plaintiff.   Since we agree with the district court of appeal except as to the last conclusion, we adopt so much of the opinion of that court, written by Mr. Presiding Justice Chipman, as is applicable:

"The action is for the enforcement of laborer's liens against the property of defendant mining company and for

judgment against defendant Lyall.   Plaintiff brings the action in his own behalf and as assignee of the claims of eight other persons.   The court made findings in favor of plaintiff and entered judgment against defendant Lyall for the sum of $839.66, with interest from June 25, 1909, and for costs, and adjudged that plaintiff 'have a lien upon the real property hereinafter described for the payment of the sum of six hundred and eighty dollars, together with interest thereon since June 25, 1909, at the rate of 7 per cent', with costs, amounting in all, exclusive of costs, to $695.50.   The usual decree for a sale of the property was made.

"Within sixty days from the entry of judgment, defendant, Paradise Gold Mining Company, appealed from the judgment on bill of exceptions.   Defendant Lyall does not appeal. . . .

"The individual claim of plaintiff is . . . to be noticed. His claim states: 'I performed 31½ days labor upon said real property commencing the same May 3d, 1909, and ending June 8th, 1909, under an agreement with Dr. Robert Lyall to pay the sum of $2.50 per day, or the sum of $78.25 in all for said labor and there is justly due me on account thereof, the sum of $78.25, after deducting all just credits and offsets.' The claim then states that defendant corporation is and was at the time the owner and reputed owner of said real property; that defendant Lyall was the person by whom plaintiff was employed 'and said labor was performed as tending giant'; that said Lyall 'is and was, at all times herein mentioned, the person who caused said work to be done who claimed an interest therein, and was and is the agent of the said owner.   There was no statement in the claim, in terms, that the labor performed was in the development of any mining claim or work thereon by the subtractive process and it is hence argued that no legitimate inference can be drawn from the facts that plaintiff is entitled to a lien.   It was not necessary that the claim should use the language of the statute.   The averment was sufficient to warrant proof of just what the labor was and from such proof it was to be determined whether the labor was in development work or mining by the subtractive process.   Section 1183 of the Code of Civil Procedure, prescribes the class of persons entitled to the lien and the purpose for which the labor is to be performed in

the case of a mining claim or real property worked as a mine, namely: 'either in the development thereof or in working thereon by the subtractive process.' The preparation of the claim and its recordation are provided for by section 1187. It is there provided: 'Every person . . . within thirty days after the performance of any labor in a mining claim, must file for record . . . a claim containing a statement of his demand . . . with the name of the owner . . . also the name of the person by whom he was employed, . . . with a statement of the terms, time given, and conditions of his contract, and also a description of the property to be charged with the lien,' etc. This section does not require the claimant to state the particular character of his labor although he must show by his proof that it was of such kind as is made lienable by the statute, i. e., development work or mining by the subtractive process. It was held, in *Continental etc. Assoc.* v. *Hutton,* 144 Cal. 609, [78 Pac. 21], that the Mechanics' Lien Law is part of the Code of Civil Procedure adopted pursuant to the requirements of the constitution. It is remedial in its character and should be liberally construed with a view to effect its objects and promote justice.

"Plaintiff testified that defendant Lyall employed him to work in the mine of defendant company and at the agreed rate of $2.50 per day and board, and that he worked thirty-one and one-half days. He testified: 'I was employed to do general work about the mine until they worked two shifts with the hydraulic, and after that I ran the giant hydraulic, nights. I did that a week just preceding the time I left.' We think plaintiff's claim of lien was sufficient in form and was supported by the evidence, unless rendered ineffective on other grounds urged against its validity.

"It is contended by appellant that there was no evidence that defendant Lyall was either the actual or constructive agent of appellant or that any portion of the work was done in the development of the mine, or in working thereon by the subtractive process. It appeared that defendant corporation owned the mining property involved and, on April 5, 1909, defendant Lyall had in contemplation the purchase of a large block of the shares of defendant corporation and on that day took an option to that end from the corporation by which he was given authority 'to go in and upon its claims

on Sycamore Creek, near Trimmer, Fresno County' and he was to 'repair the flume for said company as in his best judgment he may think necessary but in any event sufficient to run water for the whole length of it' and he was also to deliver 'to the treasurer of the corporation one-half of all the gold he and his associates and workmen may have secured or taken out of the company's property prior to July 1, 1909.' He was also authorized to 'prospect and examine the same up to July 1, 1909, and to remove the gold therefrom and to keep one-half thereof, paying and delivering the other one-half thereof to' the company. Lyall, shortly after April 5th, went to Selma, in Fresno County, and, as directed by the officers of the corporation, reported to a Mr. Matthews at that place, who was a stockholder in the corporation, for information how to reach the mine. Matthews gave him this information and Lyall reached the mine between April 10th and 20th. He informed Mr. Matthews by letter of his arrival at the mine and this letter was forwarded to the corporation. It appears that the officers of the corporation knew that Lyall was at work at the mine; the contract itself was sufficient to put these officers on notice that Lyall intended to go to the mine to carry out its objects. (*Hines* v. *Miller*, 122 Cal. 517, [55 Pac. 401].) And later, learning that the men were not getting their pay promptly, the corporation caused the statutory notice of nonliability to be posted at the mine. The men quit work and hence these claims, all of which had already accrued. The work necessary to be done to prospect or work the mine required that the flume referred to in the contract should first be restored and it was over a rough country and a mile long. It was finished and water brought to the mine and the giant started, the mine being a hydraulic proposition. The ground was worked in this way for some time but proved unsatisfactory and Lyall gave up the venture. Without going into the evidence further, of which there was considerable, we think enough appears to show that Lyall was the statutory agent of the corporation as defined in section 1183 of the Code of Civil Procedure. He was there in charge with the consent of the owner and was controlling the mining operations in part at least for the benefit of the owner. (*Higgins* v. *Carlotta G. M. Co.*, 148 Cal. 700, [113 Am. St. Rep. 344, 84 Pac. 758].) While it is true his primary object was

to prospect the mine, both parties anticipated a possible output of gold and provided for its division by the contract. We think also that the work done may reasonably be said to be development work and it requires no unwarranted construction to treat the work as having in view the operation of the mine by the subtractive process. They did take out some gold but not enough to satisfy Dr. Lyall. In constructing the flume and bringing the water to the mine for the sole purpose of working it, the only way indeed that it could be worked or prospected was, in our opinion, development work.''

Discussing the claims upon which plaintiff sued as assignee the district court of appeal said:

''The evidence was that the various claims of lien were prepared and sent to plaintiff at Trimmer Springs, near the mine, where the claimants were assembled; that the assignment, executed by the claimants, purports to assign plaintiff 'all claim or claims, demands against and amounts due from Dr. Robert Lyall and others for work and labor performed upon the property of the Paradise Mining Company, or Paradise Gold Mining Company, together with the claim of lien heretofore filed by each of us against the property of said company and recorded in the office of the county recorder of Fresno County in volumes H and I of liens, at pages variously numbered.' The assignment bears date June 30, 1909, which was subsequent to the date of the recordations of the liens, but the evidence was that the liens were all executed and verified at the time the assignment was executed, which was before the liens were recorded; that, after their execution and after the execution of the assignment they were sent down by the assignee to Fresno to be recorded; that the assignment was made solely for the purpose of collection. Upon the point the court made finding IX that, 'after the due execution of said liens, but before the recordation thereof, all of said persons . . . assigned their said claims of lien to plaintiff but said assignment was made to take effect after the recordation of said claims of lien and not before and was made for collection only and was not an absolute assignment, and the said plaintiff at no time had or claimed ownership of any of said claims filed by the persons other than himself, except for the purposes of collection only.' The plaintiff tes-

tified: 'It was through the consent of all the parties that I got this assignment. I had written to Mr. Cosgrove for information, and as the result he sent up this paper to me. I took it around myself and had the signatures attached to it. . . . I don't know the exact date when it was signed; it was after we stopped work. They were all right there in Trimmer; . . . that was before I filed my lien.' (The liens were all filed June 25, 1909.) He testified that he was 'simply collecting it for these different people. . . . It was before the liens were filed that the assignment was made. I know that because I had part of the liens in my possession at the time. . . . At the time I was getting the liens signed, I got the assignment signed. I know the assignment was signed before the liens were recorded.' The averment of the complaint in each of these assigned claims is that 'said claimant, . . . since the recordation thereof and prior to the filing of the complaint herein, duly assigned the said claim of lien together with all claim and demand against said defendants to this plaintiff.' We have given substantially all the testimony in support of this averment and in support of the finding of the court.''

From these facts the district court of appeal determined that there was no evidence to support the finding of the lower court that ''the assignment was made to take effect after the recordation of said claims,'' and that neither by averment in the complaint nor by evidence is the finding that it was ''not an absolute assignment'' justified further than on the testimony above quoted that it was ''made for collection only.'' With the latter view we agree but it is immaterial for the purposes of this case whether the assignment was absolute or not. The material question is whether or not the assignment took effect only after the filing of the liens. Relying on *Mills* v. *La Verne Land Co.*, 97 Cal. 254, [33 Am. St. Rep. 168, 32 Pac. 169], in which it was held that a laborer or materialman cannot assign his mere right to assert a lien and clothe the assignee with the power to create final evidence thereof for himself, the district court concluded that since the actual signing and delivering of the assignment occurred before the final step in establishing the liens by filing the notices had taken place, the assignors had attempted to assign the inchoate right considered in the

cited case and that under that authority their act was a nullity. We reach a different conclusion. *Mills* v. *La Verne Land Company* has been very severely criticised in the opinion in a well considered case in Utah (*Smoot* v. *Checketts*, 125 Pac. (Utah) 415), but its doctrine has long been the established law in this state. (See, also, *Duncan* v. *Hawn*, 104 Cal. 14, [37 Pac. 626].) However, the doctrine of that case has never been extended nor amplified. (*People* v. *Moxley*, 17 Cal. App. 469, [120 Pac. 43].) The gist of it is that an assignee cannot file the lien in his own name and that therefore the attempted assignment of the personal right to perfect it is of no value nor effect. The lien has practically no existence for the purposes of assignment until the notice has been duly filed by the lien claimant in his own name. That is all that the case of *Mills* v. *La Verne Land Company* decides. The physical act of filing the paper may of course be done as well by an agent as by the lien claimant in person. In this case the plaintiff deposited the claims with the proper officer but there was evidence sufficient to show that in so doing he acted as the agent of his associates and to justify the court's findings to the effect that each assignor had filed his own. The assignments in terms operated upon the indebtedness of defendants to the assignors only after the filing of the claim of lien. There was nothing to prevent the claimants from assigning something not yet created in such manner that the assignments should not be effective until the happening of a future event.

If McClung had gone to the county seat carrying the notices of lien and an envelope containing the assignments directed to an agent of the other claimants and if after filing the claims and delivering the envelope said agent had given him the assignments, we think there could be no question of the regularity of the proceeding and the validity of his title; and we see no incongruity in his acting both as agent for the purpose of perfecting the liens and as assignee of them after they should be perfected. Under the text of the assignment it operated neither upon the indebtedness nor the evidence thereof until the due filing and recordation of the latter. We conclude therefore that the superior court's finding in this regard was justified.

The judgment is therefore affirmed.