[Civ. No. 9231.   Third Dist.   Mar. 13, 1958.]

FRANK BAKER, Respondent, v. E. R. WAITE et al., Defendants; LELAND J. CUNEO et al., Appellants.

Tebbe & Correia for Appellants.

Samuel R. Friedman and Margaret E. Hoyt for Respondent.

VAN DYKE, P. J.—By this action plaintiff, respondent herein, on behalf of himself and certain assignors, sought to impose upon real property owned by defendants Cuneo and Garibotti, appellants herein, liens for unpaid wages arising from employment of respondent and his assignors by defendants Waite and Davenport who were lessees of the real property. The complaint alleged, and the court found, that appellants were the owners of the real property involved; that respondent and his assignors have performed labor as miners upon the real property; that the lessees were operating the property as a mine; that the work and services rendered were for the working, preservation, construction, improvement and development of the real property as a mine, and for the benefit of said property in the entirety. Judgment was rendered in favor of respondent and therefrom Cuneo and Garibotti, the owners of the real property, have appealed.

Appellants assert that the findings of fact are not supported by the evidence and that the conclusions of law are not justified by the findings. A discussion of these assignments of error requires a summary statement of the evidence.

It appears that the two parcels of real property involved are separated by a considerable distance, estimated by witnesses to be from 12 to 20 miles. One parcel, known as the millsite, contained a mill on which the ore taken from the mining property was processed mainly by concentration. The mining property was mined for chromite. Speaking generally, the area has long been known as one of the areas of the state producing chromite commercially and chromite had been mined therefrom at various times. The earlier operators had extracted chromite by methods which included both tunneling and open cut operations and had dumped tailings on the property and left them to lie there. A considerable part of the mining done by respondent and his assignors consisted in reworking the old tailings although a part of the work was done in the old cuts and tunnels. This operation, too, appeared to have been a culling and concentrating process, the accumulated products selected for transportation and milling being then trucked to the mill where the processing was continued. Some of the work done was the repair and reconstruction of a campsite on the mining property to house and care for the

miners, and other work involved the building of access roads. It fairly appears from the record that the lessees embarked on a program of reactivating the mine, the program including the use of the mill, the whole operation of mining and milling being a coordinated one.

In their attack upon the findings of fact as being unsupported by evidence appellants assert that some of the miners never worked on the millsite and that others never worked at the mine. There was a conflict as to the men having worked entirely on one or the other parcel of the real property, but in any event that would be immaterial since this was a single coordinated enterprise and, taken as a whole, involved a mining operation. It would make no difference that one miner worked at one point and another miner worked at another.

Cuneo, one of the appellant owners, testified that no work was done on the mining property as described in the complaint, but it is admitted that the property described in the complaint is owned by appellants. Respondent testified the work was done on the property described in the complaint, that the owners were on the property while the work was being done and stated to respondent that the location where the work was done was within the boundaries of the described property. The trial court could accept this testimony and therefrom infer that the respondent and his assignors were working on the described property belonging to appellants and that appellants, being present, would have protested if ore was being extracted from land not owned by them or not within the Waite-Davenport lease. They shared in the proceeds and were presumptively honest. Some support may be found for the finding attacked and the descriptions of the area involved in official publications of the Department of Natural Resources, Division of Mines, concerning chromite deposits of Siskiyou County (Bulletin 134, pt. I, chap. 2, p. 118), from which we quote: ''The Seiad Creek or Mountain View deposits are located between the forks of Seiad Creek in sec. 20, T. 47 N., R. 11 W.'' Portions of this section 20 are described in the complaint as Parcel II. Respondent testified that the land involved was located between the forks of Seiad Creek. The record substantially supports the challenged finding.

Appellants challenge the finding that the work done was upon and for the benefit of Parcel I as described in the complaint and referred to in the record as the millsite. They

assert that only a small portion of that parcel was under lease to the lessees Waite and Davenport, and that there is no evidence that the work done was performed upon the leased portion. Therefore, say appellants, the finding in respect of Parcel I is in error because it does not limit the lien to the land under lease to Waite and Davenport. The land described in the complaint as Parcel I consists of a single body of land on which the mill is placed. Witnesses referred to the parcel as the millsite and the entire parcel is admittedly owned by appellants. A description of Parcel I given in the complaint is: "Mineral Lots 37 & 47, Section 16, Township 45 North, Range 10 West, M.D.M." Appellants introduced in evidence a lease to Waite and Davenport, in which the land leased is described as a "certain mining claim known as the 'California Placer Mining Claim,' being Tract A and B in Lot 47, Survey No. 132 and embracing a portion of Section 16, Township 45 North, Range 10 West, M.D.M." Appellants in their brief say that "there is no evidence that work was performed upon any other portion of this tract of land" than the land described in the lease. However, the testimony is that the miners performed work at the millsite in the operation and upkeep of the mill itself and the handling of the ore trucked to the mill. There is no way of determining the limits of the area used in the mining operation, and the appellants, beyond offering the lease in evidence, made no effort to inform the court as to just what the limits were in respect of which the lessees had a right to use the property on which the mill was located. Under the circumstances, the court was justified in finding that the property used under the lease was that described in the complaint. Some latitude must be allowed men working as miners and seeking to impress property with a lien for their unpaid wages in matters of niceties of land description. In the absence, therefore, of more definite proof by the owners, limiting the area as to which the lessees were exercising rights of occupation, the trial court was justified in finding the facts as it did.

Respondents assert that work done in reworking the old tailings was not work for which a lien can be allowed because such work would not constitute mining. They say the dump consisting of material removed from its original place in the land by the early operations became personal property of those who displaced it, and that reprocessing this and obtaining therefrom mineral left there by the early miners was not labor for which a lien could be allowed under the

cited code section. ▮ It is well settled that statutes providing for liens by laborers are to be liberally construed to attain the purpose for which they were enacted. (*McClung* v. *Paradise Gold Min. Co.,* 164 Cal. 517 [129 P. 774].) ▮ It appears from the testimony that the dump being worked on was of early origin; that the dumps had been abandoned by those whose mining had created them and the court could infer that these tailings had lost their aspects of personal property and had become a part of the soil. Rickets on Mining, page 150, note 84, states that tailings which are dumped on nonmineral land and abandoned become, upon abandonment, a part of the realty so as to mineralize the land on which they are placed and make it subject to mining location by the first comer. We think it must be held that where, as in this case, tailings of early mining operations have been left upon the mining claim and have been abandoned by those who placed them there they belong to the owner of the claim as a part thereof and that the work of extracting values therefrom undertaken later must be held to be mining such as affords ground for the allowance of a miner's lien upon the land. ▮ "In a broad or enlarged sense the term 'mine' denotes the vein, lode, or deposit of mineral, and is also used to denote the place where, or the parcel of land on which, such mineral vein or deposit is found." (58 C.J.S. 14.) In addition to the foregoing there was testimony that a part of the work done on the dump was necessary to clear the old cuts and tunnels for working. We think it was substantially shown that all of the labor for which liens were allowed was work done in a mining claim and/or upon real property worked as a mine by the subtractive process as required by the statute.

The judgment is affirmed.

Peek, J., and Warne, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.