[No. 8,846.   Department One.—December 9, 1884.]

THOMAS N. WILLIAMS, RESPONDENT, v. THE SANTA CLARA MINING ASSOCIATION OF BALTIMORE ET AL., FARMERS LOAN AND TRUST COMPANY, AND EXECUTORS OF THE WILL OF WILLIAM O'BRIEN, DECEASED, APPELLANTS.

APPEAL—SERVICE OF NOTICE ON ADVERSE PARTIES—MODIFICATION OF JUDGMENT.—The Supreme Court has no jurisdiction to hear an appeal from a judgment, unless the appellant shall have served a notice of appeal on all the parties whose rights may be affected by a reversal of the judgment, or where the appeal is from a part of the judgment, by a reversal of the part appealed from. But a modification of the judgment may be made on an appeal from the whole judgment, although some of the parties have not been served with the notice of appeal, provided such modification cannot affect the rights of the parties not served.

LXVI. CAL.—13.

66   193
79   249

66   193
83   372

66   193
88   598

66   193
99   267

66   193
a107  623

66   193
112  149

66   193
a114  493

66   193
120  179

66   193
122  390

66   193
127  287

66   193
133  289

66   193
146  575

66   193
148  704

66   193
149  175
f149  182
e149  322

ID.—On an appeal from a judgment as an entirety, the power of the Supreme Court is not limited to an affirmance or reversal of the judgment as a whole, but it may modify the judgment, when a modification is appropriate and necessary to a correct determination of the rights of the parties.

MECHANIC'S LIEN—MINING CLAIM.—The term "mining claim" has always been applied to a portion of mineral lands to which the right of exclusive possession and enjoyment by private persons has been asserted by actual occupation, or by compliance with local mining laws, rules, usages, or customs. Land, the title to which is held under a Spanish or Mexican grant, although mineral in character, is not a mining claim; and the statute creating liens in favor of mechanics and laborers has no application to such land.

ID.—PRIORITY OF MORTGAGE LIEN.—The lien of a recorded mortgage or deed of trust takes priority over a subsequent mechanic's lien, under section 1186 of the Code of Civil Procedure.

ID.—MORTGAGE—NOTICE.—Section 1192 of the Code of Civil Procedure, requiring the owner, or person having or claiming an interest in land on which an improvement is to be erected, to give notice that he will not be responsible for the cost of the same, does not apply to, nor affect the interest of a prior mortgagee under a recorded mortgage.

APPEAL from a judgment of the Superior Court of Santa Clara county, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*McAllister & Bergin,* and *Winans, Belknap & Godoy,* for Appellants.

*Craig & Meredith,* for Respondent.

McKINSTRY, J.—I. The decree appealed from provides that the proceeds of the sale of certain properties of the defendant, the Santa Clara Mining Company of Baltimore, shall be applied, first, to the amount adjudged in favor of plaintiff, for work and labor done by plaintiff on or in a mine of said defendant, and for work and labor on or in said mine done by assignors of plaintiff; second, to the claim of the defendant, the Farmers' Loan and Trust Company of the City of New York; third, to the amount found due the defendants, the executors of the estate of William O'Brien, deceased; and, fourth, to the claim of the Bank of California.

The appeal is by the executors, and by the Farmers' Loan and Trust Company. Notice of appeal was served on plaintiff, but no notice was served on the defendant, the Santa Clara Mining Company, or on the defendant, the Bank of California.

It is contended by respondent, the plaintiff, that this court

has no jurisdiction to disturb the judgment, the necessary par ties not having been served with notice of appeal.

This court has not jurisdiction to hear an appeal from a judgment, unless the appellant shall have served a notice of appeal on all the adverse parties; that is to say, upon all whose rights may be affected by a reversal of the judgment; or, where the appeal is from part of a judgment, by a reversal of the part appealed from. And where the appeal is from the whole judgment, this court has no jurisdiction to modify the judgment in such a manner as shall affect the rights of the parties on whom notice of appeal has not been served, as such rights have been ascertained and finally determined by the judgment. But the mere fact that the appeal is from the whole judgment does not deprive this court of the power of modifying the judgment, provided such modification cannot affect the rights of the parties not served with notice.

Neither the defendant, the Santa Clara Company, nor the defendant, the Bank, has appealed from the judgment of the Superior Court. The first is satisfied with the decree providing for the sale of its lands (the proceeds to be distributed among the parties found to have liens thereon), and the Bank is satisfied with the priority given to the other liens. It is apparent that a modification of the decree, by which the appellants may be given precedence to the plaintiff, cannot affect the parties not served, provided no additional costs are imposed as a lien upon the property; and the effect of the modification will not be to impose a lien for costs. For the purpose of determining whether such modification should be made, we of are opinion we have jurisdiction to entertain the appeal from the judgment.

Nor do the cases cited by respondent uphold an opposite view. In *Senter* v. *De Bernal*, 38 Cal. 637, which was an appeal from a judgment of partition, it was said : " Every party whose interest in the subject matter of the appeal is adverse to or will be affected by the reversal or modification of the judgment or order from which the appeal has been taken, is, we think, an adverse party within the meaning of the provisions of the code, irrespective of the question whether he appears from the face of the record in the attitude of plaintiff, or defendant, or intervenor." " The *adverse* party * * * means the party

whose interest in relation to the subject of the appeal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by the appeal." (*Thompson* v. *Ellsworth*, 1 Barb. Ch. 627.)

It has never been held here that, on an appeal from a judgment as an entirety, the power of this court is limited to an affirmance or a reversal of the judgment as a whole. On the contrary, it has been the uniform practice, in such cases, to modify the judgment, when a modification is appropriate and necessary to a correct determination of the rights of the parties. When a party appeals from a judgment as a whole, *he seeks* not only the reversal, but also any proper modification of the judgment. Of course, he can never obtain, because this court has no power to grant, a modification which can affect those not parties to the appeal. The meaning of *Senter* v. *De Bernal* is very plain. The court there held that the appellant must notify all the parties who are interested in opposing the relief sought by the appeal, " or his appeal, as to those not served, will prove ineffectual; and also as to those served, if the relief sought is of such a character that it cannot be granted as to the latter, without being granted as to the former also." (38 Cal. 642.)

In *In re Medbury*, 48 Cal. 83, it was said that, on an appeal from an order of the probate court removing a guardian of an estate, and appointing another in his stead, the newly appointed guardian is a necessary party, because, if the order should be reversed, the last appointee would be displaced. *Reed* v. *Allison*, 61 Cal. 461, was an appeal from a judgment in a partition suit, where the adjudicated rights of all the parties would be affected by a reversal of the judgment of the lower court. The determination in *Wittenbrock* v. *Bellmer*, 62 Cal. 558, turned upon " the law of the case," and the existence or non-existence of any judgment to be appealed from ; and in *O'Kane* v. *Daly*, 63 Cal. 317, the court only held that the co-defendants of appellant would be affected by the reversal of the judgment.

II. Sections 1183 and 1185 of the Code of Civil Procedure read :

" 1183. Mechanics, material-men, artisans, architects, and laborers of every class performing labor upon or furnishing material to be used in the construction, alteration, or repair of

any mining claim, building, wharf, bridge, ditch, flume, aqueduct, tunnel, fence, machinery, railroad, wagon-road, or other structure, shall have a lien upon the property upon which they have bestowed labor or furnished material, for the value of such labor done and material furnished. This lien shall not be affected by the fact that no money is due, or to become due, on any contract made by the owner with any other party."

"1185. The land upon which any building, improvement or structure is constructed, together with a convenient space about the same, or so much as may be required for the convenient use and occupation thereof, to be determined by the court on rendering judgment, is also subject to the lien, if at the commencement of the work, or of the furnishing of the materials for the same, the land belonged to the person who caused said building, improvement or structure to be constructed, altered or repaired; but if such person owned less than a fee simple estate in such land, then only his interest therein is subject to such lien."

It is contended by respondent, that section 1183 gives a lien to every laborer who performs labor upon any mining claim; and that the words "in the construction, alteration or repair" relate to material to be used in, and not to labor to be performed on, "any mining claim, building, wharf, bridge, ditch, flume, aqueduct, tunnel, fence, machinery, railroad, wagon-road, or other structure."

Adopting this construction of the language, the section would read: "Mechanics, artisans, architects, and laborers of every class performing labor upon any mining claim, etc., and material-men furnishing material to be used in the construction, alteration, or repair of any mining claim, etc., shall have a lien upon the property upon which they have bestowed labor or furnished material, etc." But, while this view of the legislative intention might be satisfactory to the plaintiff herein, it would not, perhaps, render the meaning of the section of the code more easy of comprehension. Unless mining claims can be "constructed, altered, or repaired," material cannot be used in their construction, alteration, or repair.

But if it be conceded that one who works upon or in a mining claim may secure a lien for the value of his labor on the whole

claim, the court below did not find that plaintiff or his assignors " bestowed labor " upon a *mining claim.* A " mining claim," as the term is used in the statutes of the United States, is that portion of a vein or lode and of the adjoining surface, or of the surface and subjacent material, to which a claimant has acquired the right of possession by virtue of a compliance with the laws of the United States and the local rules and customs of miners. (Copp's U. S. Mining Decisions, 136, 142 ; Weeks on Mineral Lands, 118.) Independent of acts of Congress, providing a mode for the acquisition of title to the mineral lands of the United States, the term " mining claim " has always been applied to a portion of *such* lands to which the right of exclusive possession and enjoyment, by a private person or persons, has been asserted by actual occupation, or by compliance with local mining laws, or rules, usages, or customs.

In the case now here, the court below found that the defendant, the Santa Clara Company, was the owner of two tracts of land, one being a portion of the *Rancho Los Capitancillos*, and consisting of eleven hundred and nine 67-100 acres (the title whereto was derived through a patent from the United States), and the other containing three hundred and fourteen 68-100 acres, being *Pueblo Tract No. 2*, formerly belonging to the city of San José. The court also found that " the whole of said land is commonly known as the *Guadaloupe Mine* " ; and then proceeded to declare a lien in favor of plaintiff upon both tracts, and to decree that the fourteen hundred and twenty-four 55-100 acres should be sold to satisfy it.

The lands directed to be sold were not a " mining claim," either in the popular sense of the words, or as the term has been employed in judicial decisions, or as it is used in the code. The Fremont Grant is not a " mining claim," although many mines have been opened within its boundaries, and the owners of the grant may claim such mines to be their own. The right of the defendant, the Santa Clara Company, to a portion of the *Rancho Los Capitancillos*, or to a portion of the *Pueblo* lands of San José, and to extract ores therefrom, in no way depended upon a claim to the possession made in recognition of and in conformity to local rules adopted by miners of a mining district, or in accordance with the usages or customs of a locality.

The defendant derived its title, as would seem, from the Mexican or Spanish government to the larger tract; certainly so, as to the *Pueblo* land. We take notice that no patent, based upon " mining claims," could have been issued under any act of Congress for the whole, or for eleven hundred and nine acres, of the *Rancho Los Capitancillos.* The plaintiff could not acquire the statutory lien upon the lands of the Santa Clara Company, simply because the statute does not authorize it. It may be that the statute is not sufficiently comprehensive; indeed, it would, perhaps, be difficult to say why one class of " material-men," or laborers, should have preference over another; why, for instance, the furnisher of seed, or the plowman, should not have a lien on the farm of him to whom the seed is supplied, or for whom the plowing is done. But the legislature has seen fit to limit the benefit of the lien to particular classes, and we are not authorized to extend it to others.

III. There is another view of the case before us, which we think to be correct, and which requires a modification of the judgment.

It is admitted that the instruments executed by the defendant, the Santa Clara Company, to the appellants, and constituting liens upon the property decreed to be sold, were recorded prior to the time when any labor was done by plaintiff, or his assignors. In the absence of any statutory provision as to record or notice, the appellants' liens would have precedence, in accordance with the maxim *qui prior est in tempore, potior est injure.*

Section 1186 of the Code of Civil Procedure provides:

" The liens provided for in this chapter are preferred to any lien, mortgage or other incumbrance which may have attached subsequent to the time when the building, improvement or structure was commenced, work done, or materials were commenced to be furnished; also, to any lien, mortgage, or other incumbrance, of which the lien-holder had no notice, and which was unrecorded at the time the building, improvement or structure was commenced, work done, or the materials were commenced to be furnished."

There can be no doubt that the effect of the section last quoted, as applied to the facts of the case before us, is to give pri-

ority to the liens of appellants; or rather, the section does not take from them their priority, since their liens were recorded.

Both appellants are to be treated simply as incumbrancers. The fact that the instrument made to one is a deed of trust, does not extend the interest of that one in the eye of a court of equity, which looks beyond the form to the actual nature of contracts.

It is, however, insisted by counsel for respondent that the appellant had knowledge that he or his assignors, or some of them, were working in a mine of the Santa Clara Company, and failed to give notice that they would not be responsible for the labor, and, as a consequence, *lost* the priority. Section 1192 of the Code of Civil Procedure reads:

"Every *building* or *other improvement* mentioned in section one thousand one hundred and eighty-three of this code, *constructed* upon any lands with the knowledge of the owners, or the person having or claiming any interest therein, shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter, unless such owner or person having or claiming any interest therein shall, within three days after he shall have obtained knowledge of the *construction, alteration or repair,* or the intended construction, alteration or repair, give notice that he will not be responsible for the same, by posting a notice in writing to that effect in some conspicuous place upon said land, or upon the building or other improvement situated thereon."

The language of the section last recited, which treats of *buildings* and *improvements,* and of knowledge of the *construction,* etc., would hardly cover a case like the one now before us. But, however that may be, it is very plain the "owner or person having or claiming an interest" in the lands on which an improvement is erected, is not the person referred to in section 1186 as having a "lien, mortgage or incumbrance."

The rule *noscitur a sociis* is clearly applicable to the "person having an interest" of section 1192. The section provides a mode for binding the "owner," or person having an interest —that is, one having a legal estate less than the fee, or such an equity as may be enforced by securing a transfer of a legal

estate. The rights of mortgagees and incumbrancers, with reference to those to whom the provisions of the code concede a lien, are fixed and determined by section 1186. By that section it is, in effect, provided that the mortgagee, whose mortgage is duly recorded, shall have precedence of any lien arising out of work subsequently done or material subsequently furnished. It is certainly remarkable, if it had been the intention of the code-makers that the recorded mortgage, thus given priority, might be deprived of its priority by the failure of the mortgagee to do an act imposed upon him by the subsequent conduct of another, that such event should not have been provided for in the section which treats of the relative rights of the laborer or material-man, and other lien-holders, mortgagees, or incumbrancers.

But it is well settled in this State, that a mortgage is merely a lien on, and passes no estate or interest in the mortgaged premises, except for the purposes of taxation. (*McMillan* v. *Richards*, 9 Cal. 365; *Dutton* v. *Warschauer*, 21 Cal. 609.) In *Mack* v. *Wetzlar*, 39 Cal. 256, it was said, a mortgagee has neither *jus in re* nor *jus ad rem*, but a mere right to have his debt paid out of the proceeds of a sale of the mortgaged property, unless it should be otherwise paid; that it is a right which will pass by simple assignment, but will in no case pass by a conveyance of the land alone. It is manifest that one having such a right has not " an interest in the lands " on which a building or improvement may be constructed, within the meaning of section 1192 of the Code of Civil Procedure.

That section declares no consequence to follow upon a failure by a person having or claiming an interest in the lands, who has obtained knowledge of the " construction, alteration, or repair," and who fails to give notice that he " will not be responsible for the same," except that the interest of such person " shall be subject to any lien filed in accordance with the provisions of this chapter," and *sold* to satisfy the same. It seems sufficiently plain that the section of the code refers to an estate or interest in land which may be sold and conveyed, and does not provide that a mere lien shall become " subject " to another subsequent lien, in the sense that the later lien shall acquire precedence over the prior.

As the questions we have considered arise upon the findings and decree, it is not necessary to determine whether we have jurisdiction of the appeal from the order denying the motion for a new trial. That appeal may be dismissed.

The appeal from the order denying the motion for a new trial is dismissed.

The judgment is reversed, and the cause is remanded, with direction to the court below to modify the judgment in accordance with the views hereinbefore expressed.

Ross, J., and McKee, J., concurred.

Hearing in Bank denied.