[Sac. No. 1129. In Bank.—February 12, 1906.]

## THOMAS W. HIGGINS et al., Respondents, v. CARLOTTA GOLD MINING COMPANY, Appellant.

MECHANICS' LIENS—LAW APPLICABLE.—Mechanics' liens are governed by the law in force when the liens attach.

ID.—LIENS UPON MINING CLAIMS—LESSEE AS AGENT OF OWNER—MINING WORK.—Under a lease of mining claims, by the terms of which the owner of the claims was to share in the benefits of the work and under which mining work was done by the lessees prior to the amendment of 1903 to section 1183 of the Code of Civil Procedure, the lessees were, by the terms of that section, the agents of the owner; and laborers performing work in the extraction of ore from the mine are entitled to claim a lien therefor against both the lessees and the owner.

ID.—IMPROVEMENT OF MINE UNDER TERMS OF LEASE—PRESUMED KNOWLEDGE OF OWNER—ABSENCE OF NOTICE.—Where by the terms of the lease the lessees were to improve the mine by drifting and stoping for the purpose of discovering and opening up new ore bodies for the benefit of the lessor and owner, he must be presumed to know its terms, and in the absence of a notice disclaiming liability for such improvement, liens may be enforced against him for work so done.

APPEAL from a judgment of the Superior Court of Tuolumne County. G. W. Nicol, Judge.

The facts are stated in the opinion of the court.

J. E. Foulds, for Appellant.

J. B. Curtin, J. C. Webster, J. F. Rooney, and G. G Grant, for Respondents.

SHAW, J.—In this case a number of persons who had performed labor upon a mine filed separate claims of lien on the two mining claims constituting the mine for the sums due them, respectively, for such labor, and afterwards began the actions involved in this appeal to foreclose their said liens. Several separate actions were begun, but before the trial all were consolidated and tried as one case. The parties defendant were the Carlotta Gold Mining Company, which was the owner of the mining claims, and David Naegle, David Miller, and J. B. Coleman, who were lessees thereof, operating the mine under a lease of the mining claims executed to them by the said owner. The two mining claims were worked together as a single mine, and no objection is made on the ground of misjoinder. The labor for which the liens were claimed was all performed for the lessees, and under contracts made by the lessees alone with the respective claimants. A personal judgment was given in favor of each claimant against the lessees for the amount of his particular claim, and against all the defendants, including the appellant, for the foreclosure of the liens and the sale of the mining claims to pay the same. A motion for new trial, made by the Carlotta Gold Mining Company, was denied. The company alone appeals from the judgment and from the order denying its motion for a new trial.

It is conceded that the work for which the several liens were allowed was done upon the mine, and was of the value for which judgment was given, and that the interest of the lessees in the mining claims is subject to the liens. The sole question presented is the liability of the interest of the lessor, the Carlotta Gold Mining Company, in the property to the liens, and to sale for the payment thereof. The lease, under which the lessees were operating, gave them the exclusive possession of the mining claims during the term, and provided that they should forthwith begin and "continually prosecute" the work of "exploring, developing, and mining

upon said premises," and should mill and reduce the
ores extracted, and that they would "pay to the lessor
monthly, on the 10th day of each month . . . two thirds of
the net profits of the proceeds derived by him (them), from
the working of said mine during the calendar month im-
mediately preceding," less the sum of $2,131 in unpaid bills
of a former lessee, and the cost of "such machinery and im-
provements as he (they, the present lessees) shall have put
upon the premises," which amounts were to be first paid from
such gross receipts. The agreed statement of facts, set forth
in the statement used on motion for a new trial, shows that
the work for which the liens were claimed was done in part in
extracting ore from the portion of the ledges already exposed
by shafts sunk in the mine before the execution of the lease,
and in part "in drifting and stoping for the purpose of open-
ing up new ore bodies and discovering better ore." From the
findings it appears that certain of the liens were for work
done exclusively for the purpose of extracting ore, and not in
the process of development, but many of them were for work
which, for aught that appears in the record, may have been
done either in extracting ore, or in development and improve-
ment, or in both. According to our view of the law, and of
the correct interpretation of the lease under which the work
was done, the interest of the Carlotta Gold Mining Company
is liable for all the liens, whether for work done exclusively
in the extraction of ore, and for that purpose only, or for
work done for development to discover new or better ore, or
to facilitate the extraction of ore, discovered or undiscovered,
or for work which served to accomplish all these purposes.

Section 1183 of the Code of Civil Procedure contains two
distinct and separate provisions allowing distinct classes of
liens. One provision, stated in the first clause, allows a lien
for work done or materials supplied in the construction of
buildings or excavations on land, which are made in the way
of an improvement, to enhance its value or make it more
useful, or available for a new use. The other provision is in
the second clause, and relates to, and gives a lien for, work
done in or upon mines, which may result either in the con-
struction of an improvement thereto, or in the partial or
total destruction thereof, by the extraction of the ore which
gives it value. Then follows a provision which, as it stood

when these liens were filed, was as follows: "And every con-
tractor, sub-contractor, architect, builder, or other person
having charge of any mining, or of the construction, altera-
tion, addition to, or repair, either in whole or in part, of any
building or other improvement, as aforesaid, shall be held
to be the agent of the owner for the purposes of this chapter."
By an amendment made afterwards there was inserted im-
mediately after the words "any mining," the phrase, "either
in the development thereof or in working therein by the sub-
tractive process." (Stats. 1903, p. 84, c. 76.) We do not
perceive how this changes the effect of the clause as it stood
before, but the question is not involved, for this case must
be decided upon the law existing at the time the work was
done and the liens filed. This clause, as a whole, refers to
both classes of liens. The phrase "any mining" refers solely
to the working of a mine, and its effect is that the person in
charge of any "mining" is made the agent of the owner,
although the work he is prosecuting does not in the least im-
prove the property or add anything thereto, but destroys or
lessens its inherent value, by removing the ore therefrom.
(*Williams* v. *Hawley*, 144 Cal. 103, [77 Pac. 762].) In order
to make him the agent of the owner in such a case, however,
such person must be in charge, with the consent of the owner,
and must be prosecuting or controlling the mining operations,
either wholly or in part, for the benefit of the owner. (*Jur-
genson* v. *Diller*, 114 Cal. 491, [46 Pac. 610, 55 Am. St. Rep.
83]; *Reese* v. *Bald Mountain etc. Co.*, 133 Cal. 285, [65 Pac.
578].) Such benefit may be direct, as where the ore ex-
tracted, or some share of it, remains the property of the
owner, or it may be indirect, as where the ore, when extracted,
is the property of the person in charge, but is to be sold by
him, and a part or share of the proceeds is to be paid to the
owner, or for his use or benefit. The legal effect would be the
same in either case. The purpose of the statute obviously, is
to allow a lien for mining work done upon a mine against the
estate or interest therein of the person who is to be bene-
fited thereby, whether done directly for him and at his
request, or indirectly for his benefit, at the request of some
other person operating in pursuance of some express or
implied contract with him. Such a case we have here. The
lease is a contract; by its covenants the lessees undertook to

do the mining work, and both the lessees and the lessor were to share in the proceeds and benefits of the work. It might almost be said that such person would in such a case be authorized to bind the estate of the owner for a lien for such work without the aid of the special statutory provision making him constructively the agent of the owner for that purpose, but with the aid of the provision there can be no doubt of the proposition. There is nothing in either *Jurgenson* v. *Diller,* 114 Cal. 491, [46 Pac. 610, 55 Am. St. Rep. 83], or *Reese* v. *Bald Mountain etc. Co.,* 133 Cal. 285, [65 Pac. 578], that is contrary to this conclusion. In the first case the person who caused the ore to be extracted had no authority from the owner to do so, and was doing it for his own exclusive benefit. Although he was occupying the premises with the consent of the owner, he was, as to the mining work, a mere trespasser. In the latter case the decision was put upon the ground that there was no finding that the person who caused the work to be done was the "agent of the owner," nor anything from which such fact would be necessarily implied, nor anything to show that the owner was to receive, or had received, any benefit from or on account of the work done or the ore extracted. All of these facts appear in the case at bar. Section 1192 of the Code of Civil Procedure has no application to mining work which consists of removing ore solely by the "subtractive process," as it is termed in *Jurgenson* v. *Diller.* That section by its express terms applies only to "every building or other improvement mentioned in section 1183 of this code, constructed upon any lands," and hence does not include or apply to "mining" work, which does not constitute for any purpose an improvement to the mine or to the land. (*Reese* v. *Bald Mountain etc. Co.,* 133 Cal. 288, [65 Pac. 578]; *Williams* v. *Santa Clara M. A.,* 66 Cal. 200, [5 Pac. 85]; *Jurgenson* v. *Diller,* 114 Cal. 492, [46 Pac. 610, 55 Am. St. Rep. 83].) With respect to the liens wholly or in part for work done for the "purpose of opening up new ore bodies and discovering better ore," if such work consisted in making an "improvement" to the mine, apart from, or in addition to, its effect in obtaining ore from the rock excavated, it would come within the provisions of section 1192 of the Code of Civil Procedure. As the lease expressly provides that such work should be done by the lessees, when they deemed

it expedient, the lessor must be presumed to have had notice or knowledge of it from the beginning. Such work would also be for the lessor's benefit, either by reason of the increased receipts of net profits during the lease, or from the increased facility for the extraction of ore from the mine after the lease expired. It is conceded that the appellant posted no notice disclaiming any liability for such work or improvement, and consequently its estate in the property stands charged with a lien for the value thereof. (*Hines* v. *Miller*, 122 Cal. 517, 522, [55 Pac. 401].)

Our conclusions in regard to the validity of the liens as against the appellant's estate in the property renders it unnecessary to consider the objection that as to some of the liens the evidence does not sustain the findings to the effect that the labor for which the liens were allowed was done for the development and improvement of the mining claims and for the repair of the machinery situated thereon. The judgment, with respect to all the liens, for work not of the character indicated in these findings, is fully supported by the other findings made by the court. The allegation in the answer that plaintiffs knew, at the time they began work, that the defendants Naegle, Miller, and Coleman were working the mine as lessees, is immaterial, and no finding thereon was necessary.

The judgment and order are affirmed.

Beatty, C. J., McFarland, J., Angellotti, J., Henshaw, J., and Lorigan, J., concurred.