[No. 1976]

## JOHN B. LAMB, APPELLANT, *v.* GOLDFIELD LUCKY BOY MINING COMPANY (A CORPORATION) AND THE GOLDFIELD ARISTOCK MINING COMPANY (A CORPORATION), RESPONDENTS.

[138 Pac. 902]

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.

In the absence of an assignment of error to the sustaining of a demurrer to the cause of action, the ruling will not be reviewed.

2. MINES AND MINERALS—LABORERS' LIENS.

Persons performing labor in the development of mining property or to facilitate the extracting of ore have a lien upon the interest of the lessee and the owner.

3. MINES AND MINERALS—LABORERS' LIENS—ALLEGATIONS OF COMPLAINT—KNOWLEDGE OF LESSOR.

Where the complaint, in an action to enforce a lien as against the owner upon mining property for services performed for the lessee, alleged that the lease was executed by the owner for the purpose of developing and extracting ore from the property, it must be presumed that the owner had knowledge that laborers were being employed and materials furnished in developing the property under the lease.

4. MECHANICS' LIENS—LABORERS' LIENS.

The general theory upon which all labor liens are based is that they are remedial in their nature and intended to assist the laborer to obtain a just price for his services.

5. MECHANICS' LIENS—NATURE.

Mechanics' liens are purely statutory.

6. MINES AND MINERALS—CONSTRUCTION OF STATUTES.

While there must be a substantial compliance with the essential requisites of the statute in order to claim a laborer's lien, such pleadings and notices as the statute requires should be liberally construed to promote the object to be effected, and the statute in that respect should not be construed so technically as to destroy claimant's right to a lien.

7. MINES AND MINERALS—LABORERS' LIENS—ENFORCEMENT AGAINST LESSOR.

> Rev. Laws, sec. 2213, provides that all laborers and others who work upon any mine in an amount of $5 or more, or furnish material, whether done or furnished at the instance of the owner or his agent, shall have a lien upon the mine for the value of the work or materials and that every contractor, subcontractor, or other person in charge of any mining claim shall be held to be the agent of the owner for the purposes of the chapter. *Held*, that one who furnished labor in developing a mine at the instance of a lessee was entitled to a lien on the property for his services, whether the lessee was a contractor working on the property in the interest of the owner, or whether, under the lease, the lessee and owner were both to share in the benefits of the lessee's work.

APPEAL from the Seventh Judicial District Court, Esmeralda County; *Theron Stevens*, Judge.

Action by John B. Lamb against the Goldfield Lucky Boy Mining Company and another. From a judgment of dismissal, plaintiff appeals. **Reversed and remanded.**

*James Donovan*, for Appellant.

*Thompson, Morehouse & Thompson*, for Respondents.

By the Court, McCARRAN, J.:

This is an action to enforce a mechanic's lien. Two causes of action were asserted by appellant, plaintiff in the court below. The Goldfield Aristock Mining and Leasing Company was the lessee of those certain lode mining claims known as Lucky Boy No. 1 and Lucky Boy No. 2. The Goldfield Lucky Boy Mining Company was the owner of the claims and the lessor. The second cause of action relied upon by appellant is based upon services performed upon the property and a claim of lien filed pursuant thereto by George B. Crowell, the latter's claim of lien having been, for a valuable consideration, assigned to appellant, by reason of which cause of action judgment is prayed for against respondents.

By the complaint of appellant it is averred that the lease executed by the Goldfield Lucky Boy Mining Company to the Goldfield Aristock Mining and Leasing Company was for the purpose of developing and improving and extracting ore from the Lucky Boy No. 1 and

Lucky Boy No. 2 lode mining claims, and it is further alleged that the lessor, the Goldfield Lucky Boy Mining Company, had knowledge that the materials furnished by the lien claimant were used in the development of the claims, and that the lessor had full knowledge that the lien claimant was working on the property. It is further alleged that no notices were posted by the lessor exempting the mining claims leased from liability for materials furnished, or for labor performed upon or in the development of that property.

On the 20th day of August, 1908, as appears from the record, the appellant filed in the office of the county recorder of Esmeralda County his claim of lien, duly verified by him, and had the same recorded.

[1] A demurrer was sustained to the first cause of action, and, there being no assignment of error as to the order of the court sustaining that demurrer, it is not involved.

Appellant, having proceeded to trial on the second cause of action, offered in evidence George B. Crowell's notice of mechanic's lien, as filed in the office of the county recorder August 20, 1908. An objection was interposed by the defendant upon the ground that the offer of appellant was incompetent, irrelevant, and immaterial, and inadmissible for any purpose in the case. The trial court, without sustaining the objection of defendants on the ground stated, held that the lien notice was not admissible for the reason that, in order to make the owner of the property responsible personally for the indebtedness, the work must have been done for that owner himself.

The lien law of the State of Nevada (section 2213, Rev. Laws) provides that all miners, laborers, and others who work or labor in the amount of $5 or more in or upon any mine, or upon any shaft, tunnel, adit, or other excavation, designed or used for the purpose of prospecting, draining, or working any such mine, and all persons who shall furnish any timber or other material, to the value of $5 or more, to be used in or about any such mine, whether

done or furnished at the instance of the owner of such mine, or his agent, shall have and may each respectively claim and hold a lien upon such mine for the amount and value of the work or labor so performed or material furnished.

In the notice of mechanic's lien, filed by George B. Crowell and offered as evidence in the court below, the lien claimant asserts the Goldfield Aristock Mining and Leasing Company to be the agent of the Goldfield Lucky Boy Mining Company. It also asserts that the Goldfield Lucky Boy Mining Company is the reputed owner of the Lucky Boy No. 1 and Lucky Boy No. 2. The lien notice is sufficient in other respects and substantially conforms to the requirements of the statute.

In appellant's second cause of action it is alleged that the Goldfield Aristock Mining Company was the lessee of the Goldfield Lucky Boy Mining Company, and that the lease given by the latter to the former was for the purpose of developing and improving and extracting ore from the Lucky Boy No. 1 and Lucky Boy No. 2. Nothing is alleged in either the lien notice filed by Crowell, or in the complaint of appellant, as to the terms of the lease, or as to whether or not the lessor is to receive any part or percentage of the proceeds or mineral productions that might be derived from the mining operations.

The trial court offered to enter judgment against the respondent Goldfield Aristock Mining and Leasing Company as lessee. This the appellant refused to accept, stating that the company was insolvent, and that the judgment against it was of no value.

There is practically but one question before this court to determine in this case, namely: Is the mining property of a lessor to be held liable for materials furnished and labor performed on the property at the instance or request of the lessee?

It is our judgment that the trial court took an erroneous view of the matter presented. It must be observed at the outset that from the pleadings and record in this case it is disclosed that the respondent, the Goldfield Lucky

Boy Mining Company, admits the services performed and the materials furnished, as alleged in appellant's second cause of action, but, in this respect, they allege that the materials were furnished and services were performed at the instance and request of the Goldfield Aristock Mining and Leasing Company, the lessee, and that, as a lessor, the Goldfield Lucky Boy Mining Company was not responsible for the debts incurred by its lessee in the mining operations carried on under the lease. They further contend that the mining claims of the lessor cannot be bound by the lien.

In dealing with this subject, the courts of the land have not been at all harmonious. The Supreme Court of Colorado, in dealing with this subject under a statute exempting the leaseholder in certain instances, has held that a mechanic's lien will not attach to the interest of the owner of the mine for work done or material furnished in working or developing a mine, where the work is done or material furnished at the instance of, or under a contract with, one whose only interest is that of lessee. (*Wilkins* v. *Abell*, 26 Colo. 462, 58 Pac. 612.)

The Supreme Court of Colorado has on several occasions referred to the case of *Wilkins* v. *Abell, supra,* and on each occasion has reaffirmed the rule as there laid down. In the case of *Little Valeria Gold M. & N. Company* v. *Ingersoll,* 14 Colo. App. 240, 59 Pac. 970, that court, after referring to their decision in the case of *Wilkins* v. *Abell,* said: "There must be some showing to the point that the owner of the realty was in some manner obligated, either because he was a privy and party to the contract of employment, or because, in some other way than by the lease, he authorized the lessee to contract, or because the agreement, by its terms, gave the lessee authority."

In the case of *Griffin* v. *Hurley,* 7 Ariz. 399, 65 Pac. 147, that court laid down the rule that the interest of the lessee is alone liable.

In the case of *Gould* v. *Wise,* 18 Nev. 257, 3 Pac. 30, this court, speaking through Mr. Justice Belknap, held, in substance, that the interest of a lessor may be

subjected to lien claims, notwithstanding the labor and material were not furnished at his instance, if, knowing that alterations or repairs were being made or were contemplated, he failed to give notice that he would not be responsible therefor.

In the case of *Rosina v. Trowbridge*, 20 Nev. 105, 17 Pac. 751, this court approvingly referred to the case of *Gould v. Wise, supra*, and held, in substance, that the interests of the owner or owners of mining claims were chargeable with a lien for labor performed on a claim, although such labor was performed at the instance and request of one in the position of lessee. In that case the court held that the lease and contract entered into between the owners and the lessee constituted notice to the lessor of the work and improvements being done on the mine, and that, to have avoided liability, it was the duty of the lessor to comply with the statute and post notice to the effect that they would not be responsible for material furnished or labor performed.

[2] The general underlying principle in cases of this kind is that those performing labor in the development of mining property, or rendering services to facilitate the extracting of ore, discovered or undiscovered, have a lien for such labor upon the interest of the lessee and the owner. Work performed in mining property, whether it be in the extracting of precious metals, or in increasing the facilities for their extraction, or in sinking, driving, or tunneling, with the view of discovering ore, all of such work alike inures to the development of the property and to the benefit of the lessor.

[3] It is alleged by the appellant in this case, and his allegation in this respect is not controverted by the answer of respondent, that the lease under and by reason of which the Goldfield Aristock Mining and Leasing Company operated the mining property was given to that company by the Goldfield Lucky Boy Mining Company, the owner of the property, for the purpose of developing and improving and extracting ore from the property. From this it must be presumed,

even though it were not admitted by the pleadings, that the respondent, the Goldfield Lucky Boy Mining Company, had notice and knowledge that such work was going on and that laborers were being employed and materials were being furnished in furtherance of the development and improvement of the property under the terms of the lease.

The Supreme Court of Missouri, in dealing with the question of estates affected by mechanics' liens where the leasehold was a building, held that the lessor who authorized the lessee to make improvements which effected the substantial betterment of the reversion at the expiration of the term impliedly constitutes the lessee his agent for the purpose of subjecting the lease held to liens for material furnished or labor performed. (*Dougherty-Moss Lumber Co.* v. *Churchill*, 114 Mo. App. 578, 90 S. W. 405.)

In the case of *Higgins* v. *Carlotta Gold Mining Company*, 148 Cal. 700, 84 Pac. 758, 113 Am. St. Rep. 344, the Supreme Court of California, in construing the provisions of a statute similar to ours, said: "The purpose of the statute obviously is to allow a lien for mining work done upon a mine against the estate or interest therein of the person who is to be benefited thereby, whether done directly for him and at his request, or indirectly for his benefit, at the request of some other person operating in pursuance of some express or implied contract with him." In that case the court held that, where the lessor or owner of the property posted no notice disclaiming liability for labor performed or material furnished, it followed as a consequence that his estate in the property stands charged with a lien for the value of such labor.

[4] The general theory upon which all labor liens, or mechanics' liens, are based is that they are remedial in their nature—intended to aid the laborer who gives his services, or the materialman or merchant who furnishes his goods or wares, to secure the contract price or at least a just price for the services or material furnished. This is based on the principle that the material used or the

labor performed upon a specific property has enhanced its value, and that it is right that the person furnishing material may follow his material into the structure of which it became a part, or that the laborer should pursue the result of his toil in order to secure his just compensation because the structure is the result of the material furnished, or the labor done, and it is just that the owner thereof should not acquire the benefits of the labor or the improvements accruing from the material without compensating the person furnishing such labor or material.

[5] Mechanics' liens are purely creatures of statute, and the right to enforce such liens emanated entirely from statutory provisions. The property that may be subject to lien, the class of laborer that may have the benefit of lien, the time within which and the manner in which a lien may be enforced are all matters which rely entirely upon statutory provisions.

The several statutory enactments in the states in which the right of lien exists are the basis for the many decisions rendered by courts of last resort in dealing with this subject, and hence we find a lack of unity in the expressions of the courts upon the various phases that have arisen. The right of lien was unknown at common law, and had no place in equity jurisprudence. The principle itself, although having sanction in the civil law, had its statutory initiative in the spirit of justice to give to every person of ordinary intelligence the means whereby he might be secured for services rendered or materials furnished. The general principle upon which the statute laws relative to mechanics' liens is grounded being broad, it follows that it was never intended that provisions of the law should furnish a snare and involve claimants in the intricacies of pleading.

[6] Hence, while there must be a substantial compliance with the essential requisites of the statute, such pleadings and notices as the law requires should be liberally construed in order that justice might be promoted and the desired object might be effected.

It has been held that, while courts always require a substantial compliance with the statute in regard to the statement in the notice of lien and the proceedings thereunder, yet they will not give the statute such a narrow or technical construction as to fritter away, impede, or destroy the right of the lien claimant. (*Castagnetto* v. *Copper Town M. & L. Co.*, 146 Cal. 329, 80 Pac. 74.)

[7] By the provisions of our statute the right of lien was granted to persons furnishing timber or other materials to be used in or about any mine and also to laborers and others who work or labor in or upon any mine, shaft, tunnel, adit, or other excavation designed for the purpose of prospecting, draining, or working any such mine. This right of lien is provided for whether the work is done or the material is furnished at the instance of the owner of the property in person, or of his agent. By the provisions of the statute, it is expressly stated that every contractor, subcontractor, architect, builder, or other person in charge or control of any mining claim or any part thereof shall be held to be the agent of the owner for the purpose of the application of the law.

If the lease in question, given by the Goldfield Lucky Boy Mining Company to the Goldfield Aristock Mining Company, was given with the sole object and view of prospecting the property, or of improving the property in the way of determining the existence of ore bodies thereon, or for the extraction of ores without any provision for the lessee to acquire benefit from the ore extracted, then the lessee was a contractor, working on the property in the interest of the lessor, and must be held to be the agent of the owner, under the provisions of section 1 of our lien law. On the other hand, if, by provision of the lease under which the Goldfield Aristock Mining Company operated the property, the lessor was to derive a stipulated benefit from the ores extracted by the lessee or some share in the net profits derived from the property, then the lease was a contract between the parties, and by its covenants the lessee undertook to do the mining work, and both the lessee and the lessor were

to share in the proceeds and the benefit of the work. Hence the lessor was not only the indirect, but the direct, beneficiary of the labor performed in the property and all the material furnished therein, and it is obviously the intent of the statute and manifestly its spirit to allow a lien for mining work done upon a mine against the estate or interest therein of the person who is to be benefited thereby. (*Higgins* v. *Carlotta Mfg. Co.*, 148 Cal. 700, 84 Pac. 758, 113 Am. St. Rep. 344.)

The rule as established by this court in the case of *Gould* v. *Wise, supra*, and *Rosina* v. *Trowbridge, supra*, has never been questioned or modified by this court since its establishment, and we see no occasion at this time for the establishment of a different rule, notwithstanding the fact that many courts have held to the contrary. The statute makes provisions as to how a lessor may relieve himself and his estate from liability as against lien claimants, and, where one fails to throw about himself the protection which the statute affords, he cannot in justice remain silent and receive the benefit of labor and services performed on his estate and then avoid liability for a just compensation therefor.

One other point is raised by appellant in this case, namely, that the court erred in dismissing the action. It is manifest, however, that had the court admitted in evidence the notice of lien offered by appellant it would not, as a matter of course, have dismissed the action; hence it is unnecessary for us to dwell upon this phase.

The order sustaining respondents' objection to the admissibility of the lien notice and the judgment of dismissal are reversed, and the case remanded.