An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

LAS VEGAS PAVING CORPORATION,
A NEVADA CORPORATION,
Appellant,
vs.
RBC REAL ESTATE FINANCE, INC.,
Respondent.

No. 60599

**FILED**

SEP 21 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

CARDNO WRG, INC.,
Appellant,
vs.
RBC REAL ESTATE FINANCE, INC.,
Respondent.

No. 60822

## *ORDER OF REVERSAL AND REMAND*

These are consolidated appeals from orders granting summary judgment and granting motions to dismiss in an action challenging the priority of respondent's deed of trust against appellants' mechanics' liens in a construction matter. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

In 2006, appellants Las Vegas Paving Corporation and Cardno WRG, Inc. performed construction work on a resort development project. The property was divided into two parcels: lot G-1 and lot G-2. Las Vegas Paving constructed roads and a parking lot for lot G-1 and performed grading work on lot G-2.

The next year, respondent RBC Real Estate Finance, Inc. provided a construction loan to the property owner for the project. The property owner also used RBC's loan to pay off a promissory note. RBC received a deed of trust on lot G-2 in exchange for its loan and it recorded

15-28507

the deed. The construction project was later halted and Las Vegas Paving and WRG recorded mechanics' liens.

Las Vegas Paving, WRG, and RBC each attempted to foreclose on lot G-2. The district court found that RBC's deed of trust held priority over appellants' mechanics' liens. Las Vegas Paving and WRG separately appealed and we consolidated the appeals. *See* NRAP 3(b)(2).

*Mootness*

After Las Vegas Paving and WRG appealed, the City of Henderson mailed a bill for tax assessments due on lot G-2 to the property owner.[1] RBC foreclosed on lot G-2 following the district court's order and the City initiated foreclosure proceedings shortly thereafter.

At the tax foreclosure sale, lot G-2 was sold to Douglas Gerrard, RBC's attorney. He paid the amount of the delinquent payment plus interest, penalties, and costs. The City then sent a notice of the sale to RBC, as it had become the owner just before the sale, informing RBC that it had 120 days to redeem the property. Approximately 62 days after the sale, Gerrard assigned his rights and interest in the certificate of sale to RBC. Five months later, the City issued an absolute deed, free of all encumbrances, to RBC.

RBC filed a motion in this court to dismiss these appeals as moot. RBC argued that the tax sale wiped out any interest Las Vegas Paving and WRG may have had in lot G-2. This court ordered that it

---

[1]LLV-1, a subsidiary of the project's master developer, originally owned both lot G-1 and lot G-2. LLV-1 later sold lot G-2 to CRV Lake Las Vegas G-Lots, a California limited partnership.

would defer ruling on the motion until after full briefing and asked the parties to address mootness in their briefs.

RBC argues that appellants' mechanics' liens were extinguished by the tax sale following RBC's foreclosure and, therefore, that appellants' claims are moot. Under the mootness doctrine, this court will only decide cases if a live controversy is present or they "involve[ ] a matter of widespread importance that is capable of repetition, yet evading review." *Personhood Nevada v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010).

However, RBC's position depends upon the validity of the deed obtained from the City as a result of the tax sale. NRS 271.595(3) requires the treasurer to provide a deed to the purchaser at the tax sale, but only after notice of a demand for the deed has been given by the holder of the certificate of the tax sale to the owners of the property. Further, if redemption is not made within 60 days after the date of service of the notice required in NRS 271.595(3), the deed may issue. NRS 271.594(4). The merits of this case concern the proper ownership of the property based upon the priority of the parties underlying liens. If appellant's liens have priority over RBC's mortgage, they would have been entitled to notices under NRS 271.595(3) & (4). Therefore, the tax sale does not moot this appeal and we deny the motion to dismiss."

*Lien priority*

On cross-summary judgment motions, the district court ruled that RBC's deed was senior to Las Vegas Paving's and WRG's liens on three grounds: (1) Las Vegas Paving only commenced work on lot G-1 not G-2; (2) the grading work on lot G-2 was not visible work as a matter of

law; and (3) equitable subrogation applies, changing RBC's younger interest into a senior one.

We will affirm a grant of summary judgment when there are no genuine issues of material fact and a "party is entitled to judgment as a matter of law." *Wood v. Safeway, Inc.*, 121 Nev. 724, 731, 121 P.3d 1026, 1031 (2005). We conclude that the district court erred because the timing and scope of a work of improvement are genuine issues of material fact in this case. Summary judgment was not appropriate.

*Commencement of the work of improvement*

A mechanics' lien achieves priority over a deed of trust "after the commencement of construction of a work of improvement." NRS 108.225(1)(a). "The scope of an 'improvement' is a question of fact for the trial court to determine and this court will not set aside the district court's factual findings unless those findings are clearly erroneous." *I. Cox Constr. Co., LLC v. CH2 Investments, LLC*, 129 Nev., Adv. Op. 14, 296 P.3d 1202, 1204 (2013) (citations omitted). "[T]he fact-finder must define the work of improvement before it can determine when that work of improvement visibly commenced." *Byrd Underground, LLC v. Angaur, LLC*, 130 Nev., Adv. Op. 62, 332 P.3d 273, 279 (2014).

In some cases the evidence at the summary judgment stage might show that there is no genuine issue of fact regarding the commencement of a work of improvement or the scope of such work. For example, we have recognized that "contracts and permits may assist in determining the scope of the work of improvement's 'structure or scheme . . . as a whole.' If the contract expressly or impliedly excludes certain work, then that work might not be a part of the 'work of improvement.'" *Id.* (quoting NRS 108.22188). And, in *I. Cox Construction*, 129 Nev., Adv.

Op. 14, 296 P.3d at 1203, this court considered whether a district court erred in determining that the subsequent soundproofing of a shooting range was not part of the same work of improvement as construction of the range. We held that the district court's decision was not erroneous where it considered evidence of permits, the parties' contemplated scope of the project, and the purpose of the soundproofing project. *Id.*, 296 P.3d at 1205.

In this case, however, the district court appears to have simply based its decision on the fact that lot G-1 and lot G-2 are different legal parcels. It thusly concluded that any work on lot G-1 was not relevant to whether work was performed on lot G-2. To the contrary, we have said that the scope of an improvement is a question of fact. *Byrd Underground,* 130 Nev., Adv. Op. 62, 332 P.3d at 279. The district court did not make findings regarding the construction permits, the parties' contemplated scope of the project, or the purpose of the project. *See I. Cox Constr.,* 129 Nev., Adv. Op. 14, 296 P.3d at 1205. Furthermore, the record shows that Las Vegas Paving's contract with the general partner of the lot's owner was combined with a contract with the master developer. The master developer's subsidiary had owned both parcels before selling them to separate limited partnerships. It is possible that the parties to the construction contracts might have intended the scope of the project to cover both parcels.

In the summary judgment briefing, Las Vegas Paving treated lot G-1 and lot G-2 as a single work of improvement. RBC countered that Las Vegas Paving did not provide sufficient evidence showing that the improvement contract was for both lots. Because the scope of the project was a material question of fact, *I. Cox Constr. Co.*, 129 Nev., Adv. Op. 14,

296 P.3d at 1204, that was genuinely at issue, the district court erred by granting summary judgment.

*Visibility*

The district court found that Las Vegas Paving performed grading work on lot G-2 but concluded that the grading work was not visible as a matter of law. This was error.

Construction commences once the work performed "is visible from a reasonable inspection of the site." NRS 108.22112(1). We analyzed NRS 108.22112 in *J.E. Dunn Northwest, Inc. v. Corus Construction Venture, LLC,* and concluded that, "visibility alone determines priority." 127 Nev., Adv. Op. 5, 249 P.3d 501, 506 (2011). Yet we went on to say that preparatory work is not "commencement of construction" and that clearing and grading were examples of such preparatory work. *Id.* at 509.

In *Byrd Underground*, we clarified that, despite *J.E. Dunn's* statement that clearing and grading were examples of preparatory work, this court did not mean to express, as a matter of law, that grading is never visible work. 130 Nev., Adv. Op. 62, 332 P.3d at 278. Accordingly, grading work may constitute visible "commencement of construction" under NRS 108.22112 as long as it is visible from a reasonable inspection of the site. *Id.* at 278-80. *Byrd Underground* emphasized that whether work is visible from a reasonable inspection is an issue for the trier of fact. *Id.* at 279-80.

Here, the district court erroneously relied upon the dicta in *J.E. Dunn*, 127 Nev., Adv. Op. 5, 249 P.3d at 509, to conclude as a matter of law that grading work "does not constitute commencement of construction." We hold that whether work is visible is an issue of fact that, when at issue, should be left for the ultimate trier of fact.

*Equitable subrogation*

The district court found that RBC's loan paid the remaining balance of the property owner's promissory note to the former property owner. It therefore applied equitable subrogation as a separate basis to prioritize RBC's deed over appellants' liens. Appellants argue that the district court erred by applying the doctrine of equitable subrogation to their mechanics' liens. RBC responds that the district court's application of equitable subrogation is valid as an equitable assignment of the lien.

"Equitable subrogation permits 'a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance.'" *Houston v. Bank of Am. Fed. Savings Bank*, 119 Nev. 485, 488, 78 P.3d 71, 73 (2003) (quoting *Mort v. U.S.*, 86 F.3d 890, 893 (9th Cir. 1996)). In other words, the doctrine "enables 'a later-filed lienholder to leap-frog over an intervening lien[holder].'" *Am. Sterling Bank v. Johnny Mgmt. LV, Inc.*, 126 Nev. 423, 429, 245 P.3d 535, 539 (2010) (quoting *Hicks v. Londre*, 125 P.3d 452, 456 (Colo. 2005)). "The practical effect of equitable subrogation is a revival of the discharged lien and underlying obligation and assignment to the payor or subrogee, permitting the subrogee to enforce the seniority of the satisfied lien against junior lienors." *Am. Sterling*, 126 Nev. at 429, 245 P.3d at 539.

Under Nevada law, "mechanics' liens 'ha[ve] no place in equity jurisprudence.'" *In re Fontainebleau Las Vegas Holdings, LLC*, 128 Nev., Adv. Op. 53, 289 P.3d 1199, 1212 (2012) (quoting *Lamb v. Lucky Boys M. Co.*, 37 Nev. 9, 16, 138 P. 902, 904 (1914)). In *Fontainebleau*, we concluded "that the plain and unambiguous language of NRS 108.225 precludes application of the doctrine of equitable subrogation, as it unequivocally places mechanics' lien claimants in an unassailable priority

Supreme Court
OF
Nevada

(O) 1947A

7

position." *Id.* at 1212. We reasoned that "'equitable principles will not justify a court's disregard of statutory requirements.'" *Id.* (quoting *Pellegrini v. State,* 117 Nev. 860, 878, 34 P.3d 519, 531 (2001)).

In this case, the district court applied equitable subrogation to give RBC's lien priority over appellants' mechanics' liens. Yet the unambiguous language of NRS 108.225 precludes application of equitable subrogation or any other equitable rule that would upset the Legislature's decision to give priority to mechanics' liens. *See id.* Accordingly, the district court erred in applying the doctrine of equitable subrogation. The same reasoning applies to RBC's equitable assignment argument, which we also reject. Accordingly, we

ORDER the judgment of the district court REVERSED AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

 

cc: Hon. James M. Bixler, District Judge
Robert F. Saint-Aubin, Settlement Judge
Howard & Howard
Peel Brimley LLP/Henderson
Peel Brimley LLP/Seattle
Gerrard Cox & Larsen
Eighth District Court Clerk