## NEBACO, INC., AND NEVADA NATIONAL BANK, APPELLANTS, v. RIVERVIEW REALTY CO., INC., RESPONDENT.

No. 6283

February 12, 1971                    482 P.2d 305

*Guild, Hagen & Clark,* of Reno, for Appellants.

*Sidney W. Robinson* and *Sinai & Sinai,* of Reno, for Respondent.

## OPINION

By the Court, ZENOFF, C. J.:

Nebaco, together with its parent organization, Nevada National Bank, seeks to set aside its obligations under a lease executed with Riverview Realty on the ground that performance on its part became impossible.

On March 1, 1969 Nebaco and Riverview Realty executed a long-term lease. Nebaco's performance under this lease was guaranteed by Nevada National Bank. The pertinent portions of the lease state that "Lessee shall have up to and including August 1, 1969, within which to attempt to obtain interim and/or long-term financing for construction of improvements upon the land. . . ." Further, that "If on or before August 1, 1969, Lessee has not been able after exercise of reasonable diligence . . . to procure such financing above described, Lessee may thereupon at its option, terminate this lease by giving written notice to Lessor on or before August 1, 1969." If the lessee failed to cancel the lease before August 1, 1969 or if it obtained financing, the effective date of the lease was March 1, 1969.

Under the provisions of 12 U.S.C. 371(d), National Bank investments in premises are limited to the amount of the capital stock of the bank, which in this case was $1,183,600. Investments of more than that sum in premises require the permission of the Regional Administrator of National Banks. Although the lease contained no specific provisions regarding the extent of the structure to be constructed and made no mention of the condition of obtaining the Regional Administrator's permission Nebaco decided to construct a four to five million dollar building. Permission to invest that sum for this purpose was denied by the Regional Administrator on March 3, 1969.

Nebaco notified Riverview on July 23, 1969 that the lease was being terminated but Riverview rejected the termination.

Riverview brought this action to declare the lease in full force and effect. Nebaco asserted the affirmative defense that "it was impossible for defendants, or either of them, to obtain or guarantee the financing. . . ." A motion for summary judgment was made by Riverview, arguing that the defense of impossibility was unavailable because Nebaco knew of the need to obtain the Regional Administrator's permission and should have provided for the contingency of its denial, and because Nebaco could build a less expensive building without that permission. Nebaco now appeals the granting of the motion for summary judgment, asserting there were factual questions of whether reasonable diligence was exercised in seeking financing. If such reasonable diligence was exercised, they assert, the defense of impossibility may be available and there must be further proceedings.

■■■■■■

Generally, the defense of impossibility is available to a promisor where his performance is made impossible or highly impractical by the occurrence of unforeseen contingencies (Restatement of Contracts, § 454 (1932)), but if the unforeseen contingency is one which the promisor should have foreseen, and for which he should have provided, this defense is unavailable to him. Restatement of Contracts, § 457 (1932); 6 Williston on Contracts, § 1932 (rev. ed. 1938). If the foreseeable contingency is provided for in the contract, its occurrence does, of course, provide an excuse for nonperformance. 6 Williston on Contracts, § 1968 (rev. ed. 1938).

■■■■■

Nebaco urges that since it provided for the contingency of inability to obtain financing, it may terminate the contract under the doctrine of impossibility. It must fail in that assertion. The only open-end contingency which bound the lessor was the provision for the lessee's exercise of reasonable diligence to obtain financing. The lease did not provide for the contingency of inability to obtain the Regional Administrator's permission to invest the amount desired. These are distinct contingencies, though they are argued as one and the same by Nebaco.

■■■■■

Without specific provision in the contract concerning the restraints and inhibitions to which the bank is bound under the federal laws the expectation is that it would build only what it

could build with or without governmental permission. The administrator's consent is a factor with which only the lessee has to contend, not the lessor. One who contracts to render a performance for which government approval is required assumes the duty of obtaining such approval and risk of its refusal is on him. Security Sewage Equipment Co. v. McFerren, 237 N.E.2d 898 (Ohio 1968); 6 Corbin on Contracts, § 1347 (1962).

Therefore, the central question here is not whether Nebaco exercised reasonable diligence to obtain financing, rather, it is the failure to obtain the Regional Administrator's permission which is relied upon as creating the defense of impossibility. This case is thus analogous to those in which a lease is restricted to a use legal in itself but with respect to which the law requires a license or permit. In such cases it is generally held that it will be presumed that the parties anticipated that a license would be obtained and if in fact a license is refused, the lessee is held to have executed the lease with an awareness of the existing law and to have assumed the risk of refusal. Warshawsky v. American Automotive Products Co., 138 N.E.2d 816, 820 (Ill.App. 1956).

The termination of the lease rested upon Nebaco's inability to obtain the required permission of the Regional Administrator, not upon its failure to obtain financing. In such a situation, the doctrine of impossibility is unavailable because the contingency which arose is one which should have been foreseen and provided for in the contract.

Affirmed.

BATJER, MOWBRAY, THOMPSON, and GUNDERSON, JJ., concur.