PAMELA ELLIOTT, APPELLANT, *v.* MALLORY ELEC- TRIC CORPORATION; LAXALT ASSOCIATES, INC., dba ORMSBY HOUSE, RESPONDENTS.

No. 8782

November 18, 1977                    571 P.2d 397

*Echeverria & Osborne, Chartered, Brian Davenport,* and *John W. Hawkins,* Reno, for Appellant.

*Erickson, Thorpe & Swainston,* Reno, for Respondent Mallory Electric Corporation.

*Laxalt, Berry & Allison,* and *Todd Russell,* Carson City, for Respondent Laxalt Associates, Inc.

# OPINION

By the Court, MOWBRAY, J.:

Appellant, Pamela Elliott, commenced this action to recover damages from respondents, Mallory Electric Corporation and Laxalt Associates, Inc., dba Ormsby House, for injuries she received in a car accident. A thief stole a car leased by Mallory from where it was parked in front of the Ormsby House in Carson City. Later, while pursued by the police, the thief crashed into the Elliott vehicle, inflicting the damages complained of. The district judge ruled, on a motion for summary judgment, that there was no legal theory upon which the respondents could be held liable, and dismissed the complaint. Elliott has appealed.

1. *The Facts.*

On January 17, 1974, at about 10:30 p.m., Marion Mallory, Jr., President of Respondent Mallory Electric Corporation, drove a 1974 Lincoln Mark IV, leased by respondent, into the private driveway in front of Respondent Ormsby House in Carson City. Mallory and two companions went into the casino, leaving the car in the care of a casino attendant, the keys in the ignition. When they left the casino, 30 to 45 minutes later, the car was gone. The attendant, who had been briefly distracted, could not explain its absence.

Mallory reported the car as stolen. It was spotted in Reno by the Nevada Highway Patrol shortly after midnight the same night. The thief attempted to escape, driving at high speeds and ignoring traffic controls. Finally, at the intersection of Center and Mill Streets, the Lincoln struck a Volkswagen driven by Appellant Pamela Elliott, injuring her.

Appellant filed this action seeking compensation for her injuries against the car thief and, by amended complaint, against Respondents Mallory Electric and the Ormsby House. She contends that respondents were negligent in leaving the stolen vehicle unattended with the keys in the ignition and that such negligence was the proximate cause of her injuries. She argues that respondents' conduct constituted both negligence according to the common law and, as a violation of NRS 484.445, negligence per se.

2. *Negligence per se.*

Appellant urges that it was negligence per se for the respondents to leave the keys in the unattended vehicle, because such conduct violated NRS 484.445.

NRS 484.445 states: "The person driving or in charge of any motor vehicle, except a commercial vehicle loading or unloading goods[,] shall not permit it to stand unattended without first stopping the engine, locking the ignition and removing the key." Respondents contend that this statute was intended to apply only to vehicles left on public property. Appellant contends the statute applies as well to vehicles on private property, at least on private property open to the public, such as the property in question.

On its face, the statute is unqualified and, standing alone, would appear to apply to vehicles wherever located. Chapter 484 as a whole, however, indicates a more limited intent. NRS 484.777(1) states: "The provisions of this chapter are applicable and uniform throughout this state on all highways to which the public has a right of access or to which persons have access as invitees or licensees." NRS 484.065 defines "highway" as "the entire width between the boundary lines of every way *maintained by a public authority* when any part of such way is open to the use of the public for purposes of vehicular traffic." (Emphasis added.)

Appellant argues that NRS 484.777(1) establishes that NRS 484.445 applies to a casino driveway, since this is property to which persons have access as invitees or licensees. This argument ignores the word "highways" in that statute and the definition of "highways" in NRS 484.065 as "way[s] maintained by a public authority." Regardless of its public character, the driveway of the Ormsby House is not maintained by a public authority and is not within the intended scope of NRS 484.445.

Appellant also contends that the purpose of the statute indicates its intended application to private as well as public property. She cites Watts v. Colonial Sand & Stone, Inc., 316 N.Y. S.2d 482 (Sup.Ct. 1970), in support of this contention. In *Watts,* the court found that a statute prohibiting the leaving of a key in the ignition of an unattended motor vehicle on a highway applied to vehicles left on marginal streets as well as public city streets. A marginal street was distinguished from a public street as one which might be used for private commercial purposes in connection with wharf property. In its conclusion, the court noted that a statute enacted for the public safety and protection should be interpreted liberally and

that the statute in question should be construed to apply to "any public area be it a parking lot, a stairway, or a private driveway." *Id.* at 487. It should be noted, however, that the court reached this conclusion after carefully examining the precise language of the statute, which prohibited leaving keys in unattended vehicles on streets *or thoroughfares.* This additional word was concluded to indicate an intent to regulate public areas beyond those within the statutory definition of "streets." No such language is contained in the relevant Nevada statutes.

In Elliott v. Capitol Cadillac-Oldsmobile Co., 245 A.2d 634, 635 (D.C. 1968), the court held that a key-in-ignition statute did not apply to a vehicle left in the parking lot of a car dealer. The court reasoned:

> If Section 98 were applied to motor vehicles parked on private property, one who parks his car in a carport away from a public highway or, who puts his car in a closed garage, would be violating the regulation and subject to a criminal penalty merely because he left the keys in the car. . . .
>
> . . . The regulation is intended "to thwart the nefarious activities of any person tempted to steal [a car] because of the easy accessibility of the key[.]" Myers v. Gaither, D.C.App., 232 A.2d 577, 582 (1967). When a car is made less accessible to possible removal by thieves because placed on private property and away from immediate public contact and visibility, the regulation, which lists a number of operations to be performed when leaving a car unattended, does not apply.

We conclude that NRS 484.445 applies only to public property and not to a private driveway in front of a casino. The language of the relevant statutes clearly indicates that such a limitation was intended.

3. *Common Law Negligence.*

Appellant contends that, even if respondents did not violate NRS 484.445, their conduct breached a duty owed to her under the common law. She concedes that leaving one's keys in the ignition does not in every case constitute negligence. Appellant contends, however, that in the instant case there were "special circumstances" creating an "enhanced hazard" of theft and that, in light of those circumstances, respondents' actions were negligent. The circumstances alleged to be special

were the type of car (a new Lincoln Mark IV), where it was left (in front of a casino), and at what time (in the late evening). These circumstances are urged to be sufficient to withstand summary judgment, so that the questions of negligence and proximate cause should have been left to the jury.

Respondents first object that appellant cannot raise this issue on appeal, having failed to support by affidavit the relevant allegations of fact as required by Whiston v. McDonald, 85 Nev. 508, 511, 458 P.2d 107, 108–109 (1969). Respondents' contention is without merit. The relevant facts were sworn to in the affidavit of Marion Mallory, Jr., which is included in the record on appeal. The special circumstances to which appellant refers simply represent a rationale for finding negligence and proximate cause. These issues were presented to the trial court in opposition to the motion for summary judgment and may properly be considered by this court on appeal.

In determining the issues of negligence and proximate cause, there are two rules presented for our consideration.

The minority rule, which the appellant urges us to adopt, suggests that the issue of negligence should be determined in the light of the foreseeability of the theft and the subsequent negligent operation of the vehicle. Appellant cites Zinck v. Whelan, 294 A.2d 727 (N.J.App. 1972).

On the other hand, the majority rule, which we prefer, is that the owner or bailee of an automobile who leaves the keys in the ignition of his car is ordinarily not, as a matter of law, liable for injuries caused by the negligent operation of the vehicle by a stranger who steals the car. Some courts have ruled that such owners or bailees are not negligent as a matter of law because they owed no legal duty to those injured by the car thieves. *E.g.,* Richards v. Stanley, 271 P.2d 23 (Cal. 1954); Bennett v. Arctic Insulation, Inc., 253 F.2d 652 (9th Cir. 1958); Shafer v. Monte Mansfield Motors, 372 P.2d 333 (Ariz. 1962).[1]

---

[1]Other courts have come to the same result by holding that, as a matter of law, the negligence of the owner or bailee is not the proximate cause of the injuries suffered by the plaintiffs. *E.g.,* Keefe v. McArdle, 280 A.2d 328 (R.I. 1971); Parker v. Charlie Kittle Pontiac Co., 495 S.W.2d 810 (Tenn. 1973).

The weight of authority has been well expressed by Mr. Justice Traynor in Richards v. Stanley, 271 P.2d 23, 25 (1954). Stating that the question of liability turned upon whether the owner of the car had any duty to the person injured, Justice Traynor wrote, quoting Routh v. Quinn, 127 P.2d 1, 3 (Cal. 1942): "It is an elementary principle that an indispensable factor to liability founded upon negligence is the evidence of a duty of care owed by the alleged wrongdoer to the person injured, or to a class of which he is a member." The court in *Richards* distinguished the cases where a statute prohibited the leaving of keys in an unattended vehicle, holding that, where there is no applicable statute, there was no duty on the part of the vehicle owner to the person receiving injuries resulting from the theft of the vehicle.

As the Ninth Circuit Court of Appeals said in Bennett v. Arctic Insulation, Inc., 253 F.2d 652, 654 (1958):

> "It is well recognized that where the owner of a motor vehicle entrusts it to another for the latter's own use, there is no liability upon the owner for the injuries inflicted by the borrower of the vehicle while he is using it, in the absence of proof that the borrower was known to be incompetent. When a friend borrows a car, the owner knows it will certainly be driven. When the owner leaves the key in the car, he does not know that. All that can be said is that he should anticipate that a thief *might* take it and drive it. . . . (Emphasis in the original.)

In the instant case, the allegations are that Mallory left the car in the care of the attendant. As to Respondent Ormsby House, the pleadings reflect that its agent, the attendant, allegedly left the car unattended for a maximum period of 45 minutes. At the most, these allegations do no more than establish the possibility of a theft. There is nothing to suggest that the owner or bailee could reasonably foresee the theft of the car and its negligent operation resulting in injury to the appellant. Absent an allegation of a breach of duty, there was no assertion of negligence as a matter of law under the common law. *See* George v. Breising, 477 P.2d 983 (Kan. 1970).

We conclude, therefore, that the lower court did not err in granting summary judgment in favor of respondents. Their conduct did not violate NRS 484.445, because that section, read together with NRS 484.777(1) and NRS 484.065, is limited to vehicles left unattended on public property. Nor did

the complaint state a cause of action under the common law. We affirm.

BATJER, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.