132 Nev., Advance Opinion 69

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| CASHMAN EQUIPMENT COMPANY, A NEVADA CORPORATION, Appellant, vs. WEST EDNA ASSOCIATES, LTD., D/B/A MOJAVE ELECTRIC, A NEVADA CORPORATION; WESTERN SURETY COMPANY, A SURETY; AND THE WHITING TURNER CONTRACTING COMPANY, A MARYLAND CORPORATION, Respondents. | No. 61715 <br><br> **FILED** <br><br> SEP 29 2016 <br><br> TRACIE K. LINDEMAN <br> CLERK OF SUPREME COURT <br> BY_____ <br> CHIEF DEPUTY CLERK |
| CASHMAN EQUIPMENT COMPANY, A NEVADA CORPORATION, Appellant, vs. WEST EDNA ASSOCIATES, LTD., D/B/A MOJAVE ELECTRIC, A NEVADA CORPORATION; WESTERN SURETY COMPANY, A SURETY; THE WHITING TURNER CONTRACTING COMPANY, A MARYLAND CORPORATION; QH LAS VEGAS LLC, A FOREIGN LIMITED LIABILITY COMPANY; PQ LAS VEGAS, LLC, A FOREIGN LIMITED LIABILITY COMPANY; LWTIC SUCCESSOR LLC, AN UNKNOWN LIMITED LIABILITY COMPANY; AND FC/LW VEGAS, A FOREIGN LIMITED LIABILITY COMPANY, Respondents. | No. 65819 |
| CASHMAN EQUIPMENT COMPANY, A NEVADA CORPORATION, Appellant, vs. WEST EDNA ASSOCIATES, LTD., D/B/A MOJAVE ELECTRIC, A NEVADA CORPORATION; WESTERN SURETY COMPANY, A SURETY; THE WHITING TURNER CONTRACTING COMPANY, A | No. 66452 |

2/9/17: Corrected per letter to publishers. CJ

16-30273

MARYLAND CORPORATION; QH LAS VEGAS LLC, A FOREIGN LIMITED LIABILITY COMPANY; PQ LAS VEGAS, LLC, A FOREIGN LIMITED LIABILITY COMPANY; LWTIC SUCCESSOR LLC, AN UNKNOWN LIMITED LIABILITY COMPANY; AND FC/LW VEGAS, A FOREIGN LIMITED LIABILITY COMPANY, Respondents.

Consolidated appeals from a district court injunction, final judgment, and post-judgment attorney fees and costs order in a construction contract dispute. Eighth Judicial District Court, Clark County; Rob Bare, Judge.

*Reversed and remanded with instructions.*

Howard & Howard Attorneys PLLC and Jennifer R. Lloyd, Brian J. Pezzillo, and Marisa L. Maskas, Las Vegas,
for Appellant.

Holley, Driggs, Walch, Fine, Wray, Puzey & Thompson and Brian W. Boschee and William N. Miller, Las Vegas,
for Respondents.

---

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, CHERRY, J.:

In this matter, we consider whether an unconditional release from a bottom-tiered contractor (Cashman) to a higher-tiered contractor

---

[1]The Honorable Nancy M. Saitta, Justice, having retired, this matter was decided by a six-justice court.

(Mojave) is enforceable when the higher-tiered contractor properly paid the middle-tiered contractor (Cam) but the middle-tiered contractor failed to pay the bottom-tiered contractor. We conclude that NRS 108.2457(5)(e) precludes enforcement of the release when the check given in exchange for the release is not honored by the payor's bank. Although the check that Mojave gave to Cam for payment to Cashman cleared the bank, the check that Cam gave to Cashman did not clear the bank. Therefore, the unconditional release that Cashman gave to Cam and Mojave is void.

We also consider whether equitable fault analysis may be used to reduce an award in a mechanic's lien case. Based on this court's decision in *Lamb v. Goldfield Lucky Boy Mining Co.*, 37 Nev. 9, 16, 138 P. 902, 904 (1914) (holding that "equity jurisprudence" "ha[s] no place" in determining the rights of a mechanic's lienholder), we conclude that it may not.

Therefore, we reverse the decision of the district court and remand this case to the district court to recalculate Mojave's liability to Cashman with instructions that the unconditional release is void. Following recalculation, the parties may move the district court for attorney fees and costs as Nevada law permits.

### FACTS

This case stems from the new Las Vegas City Hall construction project. Respondent Mojave was chosen to be the electrical subcontractor for the project. Mojave contracted with Western Surety to provide a payment bond and, later, a mechanic's release bond for this project. Mojave accepted a bid from appellant Cashman to provide specialty materials for the emergency standby power for the building. The general contractor, respondent Whiting Turner, required that Mojave

involve disadvantaged business entities (DBE) in the project. Therefore, instead of contracting directly with Cashman for the services and materials, Mojave contracted with Cam and Cam contracted with Cashman. Mojave also paid Cam for the labor and supplies that Cashman provided.

In exchange for an unconditional release from Cashman to Cam and Mojave, Cashman received payment via a check from Cam, but Cam stopped payment on the check. Cam gave Cashman a second check for payment, but the check was returned for insufficient funds. Cashman made additional attempts to secure payment from Cam to no avail. Upon realizing that payment was not forthcoming, Cashman filed a mechanic's lien for $755,893.89, ceased working on the project, and then filed suit. Cashman and Mojave later learned that Angelo Carvalho, Cam's owner, absconded with the funds from Mojave, which should have been forwarded to Cashman. The parties proceeded to a bench trial, and the district court awarded Cashman $197,051.87 for foreclosure of security interest and $86,600 for unjust enrichment, to be paid once Cashman enters the codes for the electrical systems to communicate with each other. Following trial, the district court denied both parties' motions for fees and costs. Cashman's appeal followed.

On appeal, Cashman argues that the district court erred (1) when it declined to enforce Cashman's mechanic's lien and upheld the unconditional waiver despite lack of payment; (2) when it denied Cashman's claim for recovery through the payment bond because the court applied the defense of impossibility despite Mojave's failure to prove that its performance was impossible, or that Cam's failure to pay was not an unforeseen contingency; (3) in reducing Cashman's award based on

equitable fault and by requiring completed performance to receive the award; (4) when it issued a preliminary injunction for Cashman to input codes for the electrical system, even though the district court found that Cashman was likely to prevail on the merits; and (5) when it denied Cashman's motions for attorney fees and costs, even though Cashman prevailed at trial.[2]

## DISCUSSION

*Whether the district court erred in denying recovery to Cashman on its mechanic's lien claim by enforcing an unconditional waiver*

In its findings of fact and conclusions of law following the bench trial, the district court enforced the unconditional waiver and release that Cashman executed, determining that Mojave's payment to Cam constituted payment to Cashman and made Cashman's waiver enforceable. Cashman argues that the district court erred when it enforced the waiver and release of the mechanic's lien because the plain language of NRS 108.2457(5)(e) states that when a payment fails, the waiver and release are void.

We review a lower court's interpretation of a contract de novo when the facts in a case are not disputed. *Lehrer McGovern Bovis, Inc. v. Bullock Insulation, Inc.*, 124 Nev. 1102, 1115, 197 P.3d 1032, 1041 (2008).

---

[2]In their answering brief, but without cross-appealing, the respondents seek affirmative relief on multiple claims. NRAP 3(a)(1) dictates that "an appeal permitted by law from a district court may be taken *only by filing a notice of appeal* with the district court clerk within the time allowed by Rule 4." (Emphasis added.) This court has clarified that cross-appeals are not exempt from NRAP 3(a)(1). *See Mahaffey v. Investor's Nat'l Sec. Co.*, 102 Nev. 462, 463-64, 725 P.2d 1218, 1219 (1986) (noting "that every appeal, including a cross-appeal, must be commenced by the filing of a timely notice of appeal"). We therefore decline to consider the issues they raised in their answering brief.

SUPREME COURT
OF
NEVADA

(O) 1947A

In the instant case, the parties do not dispute the relevant facts. We also review questions of statutory construction de novo. *I. Cox Constr. Co., LLC v. CH2 Invs., LLC*, 129 Nev. 139, 142, 296 P.3d 1202, 1203 (2013).

"Nevada's public policy favor[s] the statutory right [in NRS Chapter 108] to a mechanic's lien." *Lehrer*, 124 Nev. at 1106, 197 P.3d at 1035. This court has explained that the lien statutes' purpose is to ensure "payment to those who perform labor or furnish material to improve the property of the owner." *Id.* at 1115, 197 P.3d at 1041 (internal quotations omitted). "[M]echanic's lien statutes are remedial in character and should be liberally construed." *Id.* (internal quotations omitted). This court has also explained the reasoning for Nevada's policy supporting mechanic's liens:

> Underlying the policy in favor of preserving laws that provide contractors secured payment for their work and materials is the notion that contractors are generally in a vulnerable position because they extend large blocks of credit; invest significant time, labor, and materials into a project; and have any number of workers vitally depend upon them for eventual payment.

*Id.* at 1116, 197 P.3d at 1041.

Even though Nevada prefers to enforce mechanics' liens, these statutory rights may be waived. *Id.* However, this court has held that the district court must "engage in a public policy analysis particular to each lien waiver provision that the court is asked to enforce." *Id.*

NRS 108.2457(5)(e) states as follows:

> Notwithstanding *any* language in *any* waiver and release form set forth in this section, if the payment given in exchange for *any* waiver and release of lien is made by check, draft or other negotiable instrument, and the same fails to clear the bank on which it is drawn *for any reason*, then

the waiver and release *shall* be deemed *null, void and of no legal effect whatsoever* and all liens, lien rights, bond rights, contract rights or *any other right* to recover payment afforded to the lien claimant in law or equity will not be affected by the lien claimant's execution of the waiver and release.

(Emphases added.)

We have not yet specifically decided whether an unconditional release can be used to waive the statutory rights in NRS 108.2457(5)(e), but our reasoning in *Lehrer*, where we determined that a "pay-if-paid" provision in a contract was unenforceable because such provisions "violate public policy," 124 Nev. at 1117-18, 197 P.3d at 1042, applies here. At the time the *Lehrer* parties entered into the contract containing the pay-if-paid provision, the Legislature had not yet made such provisions unenforceable. *Id.* at 1117, 197 P.3d at 1042. Nonetheless, we concluded that pay-if-paid provisions could preclude a subcontractor from being "paid for work already performed." *Id.*

The purpose of the mechanic's lien statutes is to ensure payment to those who supply materials and labor on a project, *see id.* at 1115, 197 P.3d at 1041, so Nevada's public policy disfavors the enforcement of the unconditional release in this case. Like in *Lehrer*, Cashman signed a waiver that could potentially leave Cashman unpaid even though it had performed pursuant to its contract with Cam.[3]

---

[3]The unconditional waiver and release upon final payment states, in pertinent part, as follows:

> The undersigned has been paid in full for all work, materials and equipment furnished to his Customer for the above-described Property and

*continued on next page...*

Enforcing the unconditional waiver here would violate Nevada's public policy, just like the pay-if-paid provision in the contract at issue in *Lehrer* violated public policy. And the very clear language of NRS 108.2457(5)(e) dictates that the waiver is void and unenforceable because Cashman never received payment. Here, Cashman's agent testified at trial that he executed the lien release believing, despite the waiver language contained in the release, Nevada law would protect Cashman if Cam's check did not clear the bank. The parties do not dispute that Cam's check to Cashman did not clear the bank. Therefore, the waiver is void. Just as we refused to enforce the pay-if-paid provision in *Lehrer*, we likewise refuse to enforce Cashman's release.

---

*...continued*

does hereby waive and release any notice of lien, any private bond right, any claim for payment and any rights under any similar ordinance, rule or statute related to payment rights that the undersigned has on the above-described Property, except for the payment of Disputed Claims, if any, noted above. The undersigned warrants that he either has already paid or will use the money he receives from this final payment promptly to pay in full all his laborers, subcontractors, materialmen and suppliers for all work, materials and equipment that are the subject of this waiver and release.

NOTICE: THIS DOCUMENT WAIVES RIGHTS UNCONDITIONALLY AND STATES THAT YOU HAVE BEEN PAID FOR GIVING UP THOSE RIGHTS. THIS DOCUMENT IS ENFORCEABLE AGAINST YOU IF YOU SIGN IT, EVEN IF YOU HAVE NOT BEEN PAID. **IF YOU HAVE NOT BEEN PAID, USE A CONDITIONAL RELEASE FORM.**

We also conclude that the district court erred in finding that Mojave's payment to Cam constituted payment to Cashman. The district court reasoned that because Mojave's check to Cam cleared, the unconditional release is enforceable. Yet the district court's reasoning completely subverts Nevada's public policy of ensuring that lower-tiered subcontractors are paid. Cashman's agent certainly did not execute the release because Mojave paid Cam. Cashman's agent testified that he executed the release because Cashman received a check from Cam. The agent further testified that he executed the release with the understanding that if the check failed to clear, the release would be unenforceable pursuant to NRS 108.2457(5)(e).

The statute specifically precludes enforcing a waiver when, in exchange for the release, payment "is made by check, draft or other such negotiable instrument, and the same fails to clear the bank on which it is drawn *for any reason*." NRS 108.2457(5)(e) (emphasis added). When the payment fails, "the waiver and release *shall* be deemed *null, void and of no legal effect whatsoever*." *Id.* (emphases added). Because Cashman executed the release in exchange for the payment it received from Cam (and not the payment that Cam received from Mojave), and because Cam's payment failed to clear the bank, the release is void and we reverse the district court's decision and remand this case for a new trial consistent with this opinion.

*Whether the district court erred in reducing Cashman's award on its mechanic's lien and resulting security interest claim using an equitable fault analysis*

The district court ruled in favor of Cashman on its claim for foreclosure of security interest. The court ordered that "Cashman is *in a position* to collect the amount owed, as provided in its lien, $683,726.89,

SUPREME COURT
OF
NEVADA

(O) 1947A

less any amount Cashman would receive from the escrow account for finalizing the codes." (Emphasis added.) However, the court conducted an equitable fault analysis and found that, although "both Mojave and Cashman are innocent victims here, . . . Cashman is sixty-seven percent (67%) responsible and Mojave is thirty-three percent (33%) responsible for Cam and Mr. Carvalho's actions" that resulted in Cashman not being paid. Based on its findings, the district court reduced Cashman's award to $197,051.87.

Cashman argues that the district court should not have conducted an equitable fault analysis in calculating contract damages. It further contends that the district court erred when it conditioned payment to Cashman on Cashman completing work on the project because it had already earned the amount set by contract.

Whether equitable fault can be used to reduce a security interest or a mechanic's lien appears to be an issue of first impression in Nevada. However, our opinion in *Lamb v. Goldfield Lucky Boy Mining Co.*, 37 Nev. 9, 138 P. 902 (1914), is instructive. There, this court considered whether "the mining property of a lessor [can] be held liable for materials furnished and labor performed on the property at the instance or request of the lessee." *Id.* at 12, 138 P. at 903. A lien claimant, the appellant, sought to enforce his mechanic's lien against the owner of a mine. *Id.* at 10, 138 P. at 902. The lien claimant contracted with the lessee of the mine to provide materials that benefited the mine. *Id.* The owner of the mine was not a party to the contract, but the owner was aware that the lien claimant was providing materials. *Id.* at 11, 138 P. at 902. Because neither the lessee nor the lessor would pay for the materials provided, the lien claimant sued the mine owner, the lessor, in district

court. *Id.* The district court declined to enforce the lien and held "that, in order to make the owner of the property responsible personally for the indebtedness, the work must have been done for that owner himself." *Lamb*, 37 Nev. at 11, 138 P. at 903.

This court reversed the district court's order and explained that "equity jurisprudence" "ha[s] no place" in determining the rights of a mechanic's lienholder. *Id.* at 16, 18, 138 P. at 904, 905. The *Lamb* court favorably cited to a California Supreme Court case, which noted as follows:

> The purpose of the [lien] statute obviously is to allow a lien for mining work done upon a mine against the estate or interest therein of the person who is to be benefited thereby, whether done directly for him and at his request, or indirectly for his benefit, at the request of some other person operating in pursuance of some express or implied contract with him.

*Id.* at 15, 138 P. at 904 (internal quotations omitted).

This case is similar to *Lamb*, and we conclude that its holding applies. Just as the appellant and the respondent in *Lamb* did not have a contract, Cashman does not have a contract with any of the respondents in this matter. However, Cashman's work and materials benefited the respondents, like the lien claimant's work benefited the mine owner in *Lamb*. *See id.* at 15-16, 138 P. at 904. The record before us reveals that Mojave accepted Cashman's bid for the City Hall project, and Mojave and Cashman originally intended to contract for the project. Cam was only inserted between Mojave and Cashman as an afterthought to fulfill the City's DBE requirement. Cashman and Mojave had a relationship respecting this project several months before a DBE was injected into the equation. Mojave expected to benefit from Cashman's materials and services, and did benefit, so the relationship between Cashman and

Mojave is even less tenuous than the relationship between the appellant and the respondent in *Lamb*. As Cashman derives its rights as a lienholder through Nevada statutory law, not the common law, equitable considerations are inappropriate. *See id.* at 16, 138 P. at 904.

We conclude that this court's holding in *Lamb* applies here and that equity jurisprudence (i.e., equitable fault analysis) was inappropriate to reduce the amount due under the mechanic's lien. We further conclude that equity jurisprudence provides no basis for offsetting a security interest foreclosure. A security interest is created through the lien document, so the amount awarded through foreclosure of a security interest necessarily follows the amount awarded through a mechanic's lien.

Had the Legislature wished to protect a higher-tiered contractor who fully and faithfully performs its contractual obligations to a middle-tiered contractor, the Legislature could have done so. It did not. Instead, the Legislature unambiguously elected to protect bottom-tiered contractors who provide labor and material to improve property and then perfect their security interests by properly recording a lien. This court can neither supplement a higher-tiered contractor's rights under NRS Chapter 108 nor limit a bottom-tiered contractor's rights under NRS Chapter 108— even when both contractors are innocent parties, as are the parties here. The remedy that Mojave seeks, enforcement of the unconditional lien release that Cashman executed without requiring that Cashman be paid, goes beyond mere interpretation of a statute. Such a remedy would require this court to legislate. However, that authority resides solely with the Legislature.

We note that a higher-tiered contractor may protect itself against losses of the type that Mojave sustained by contractually requiring the middle-tiered contractor to obtain a security bond for the payments that the middle-tiered contractor will make to the bottom-tiered contractor. By requiring the middle-tiered contractor to post a security bond, the higher-tiered contractor would be protected against outstanding liens on the project and payment to the bottom-tiered contractor would be ensured.

In the instant case, Whiting Turner required Mojave to acquire a security bond to protect Whiting Turner from any liens that Mojave's subcontractors might file. Had Mojave required Cam to acquire a security bond to protect Mojave from any liens that Cam's sub contractors, i.e., Cashman, might file, the losses the parties incurred would have been prevented. If Cam could not have posted a bond in accordance with NRS 108.2415, then Mojave would obviously have been on notice that it was unprotected against any subcontractor's liens. Additionally, requiring Cam to post a bond would have completely de-incentivized Cam from absconding with the funds due to Cashman. While NRS Chapter 108 does not mandate that higher-tiered contractors require lower-level contractors to obtain security bonds, we believe that such a practice would protect contractors from losses like those that the parties incurred.

Other jurisdictions likewise require higher-tiered contractors to pay twice when a lower-tiered contractor takes a lien against a project. Connecticut originally addressed this issue over a hundred years ago. *Barlow Bros. Co. v. John W. Gaffney & Co.*, 55 A. 582 (Conn. 1903). In *Barlow*, an ecclesiastical corporation contracted with Gaffney to construct

a building on the corporation's land. *Id.* at 583. Thereafter, Gaffney subcontracted the plumbing work to the Seeley & Upham Company. *Id.* Seeley & Upham then sub-subcontracted with Barlow to perform the work. *Id.* Gaffney paid Seeley & Upham in full, but Seeley & Upham failed to make any payment to Barlow. *Id.* Barlow filed a lien against the project and filed suit against Gaffney. *Id.* Gaffney claimed that the lien should be stricken because Gaffney paid Seeley & Upham, the company with which Gaffney contracted, in full. *Id.* at 584. However, the court disagreed and explained that state law entitled Barlow to a lien even though Gaffney would have to pay twice:

> Assuming, however, without deciding, that such payment [from Gaffney to Seeley & Upham] was made, it does not, we think, defeat the plaintiff's lien. The plaintiff's right to a lien is given solely by statute, and is not made to depend in any way upon the act of the original contractor in paying or not paying his immediate subcontractor. The legislative conditions upon which the plaintiff's right to a lien is made to depend do not include such an act, and, if the court should make such an act one of these conditions, that would be an act of judicial legislation, rather than one of construction and interpretation. If the original contractor is, under the present law, unprotected, in that he may be compelled to pay twice for the same work and materials, the fault is not with the plaintiff, and the remedy must be sought in the Legislature, and not in the courts.

*Id.* The Connecticut Supreme Court has since reaffirmed its decision in *Barlow*. *Seaman v. Climate Control Corp.*, 436 A.2d 271 (Conn. 1980). The *Seaman* court relied upon *Barlow* and reasoned that "[h]ad the legislature wished to limit . . . the rights of second tier subcontractors to obtain liens against the owner, it would have been easy enough [for the

SUPREME COURT
OF
NEVADA

(O) 1947A

14

legislature] to link the subcontractor's claim to the person with whom such subcontractor shall have contracted." *Id.* at 278 (internal quotation marks omitted).

Florida's statutory lien law has led its courts to similar results. *See* Fla. Stat. Ann. § 713.06 (West 2013); *Ringling Bros.-Barnum & Bailey Combined Shows, Inc. v. Hart*, 390 So. 2d 367, 369 (Fla. Dist. Ct. App. 1980) (requiring a project owner to pay a subcontractor even though the owner had paid its contractor in full, the court explained, "We recognize that our decision requires appellant to pay twice for the same work. While this result may seem harsh, that is the law of this state, and we are bound to follow it.") Florida's most recent amendment to its lien statutes expressly requires a second payment if a subcontractor remains unpaid after an owner pays the higher-tiered contractor. *See* Fla. Stat. Ann. § 713.06(2)(c) (West 2013). The law requires the following warning in a subcontractor's lien notice:

> WARNING! FLORIDA'S CONSTRUCTION LIEN LAW ALLOWS SOME UNPAID CONTRACTORS, SUBCONTRACTORS, AND MATERIAL SUPPLIERS TO FILE LIENS AGAINST YOUR PROPERTY EVEN IF YOU HAVE MADE PAYMENT IN FULL.
>
> UNDER FLORIDA LAW, YOUR FAILURE TO MAKE SURE THAT WE ARE PAID MAY RESULT IN A LIEN AGAINST YOUR PROPERTY AND YOUR PAYING TWICE.
>
> TO AVOID A LIEN AND PAYING TWICE, YOU MUST OBTAIN A WRITTEN RELEASE FROM US EVERY TIME YOU PAY YOUR CONTRACTOR.

*Id.* Nevada's perfection of lien notice statute, NRS 108.226, does not command that a potential lien claimant include such direct language in a

SUPREME COURT
OF
NEVADA

(O) 1947A

15

notice, but we do not believe that a different result is warranted. Therefore, we reverse the district court's decision and hold that the district court erred as a matter of law by reducing Cashman's award for its foreclosure-of-security-interest claim based upon equitable fault analysis.

*Whether the district court erred in denying recovery to Cashman on its payment-bond claim by applying the defense of impossibility*

The district court found "that the defense of impossibility is available to Mojave in this situation" and determined that Cashman was not entitled to payment via Mojave's payment bond through Western Surety. The court explained that the defense applied because Mojave could not have foreseen that Cam would steal the funds from Mojave intended as payment to Cashman.

Cashman argues that the district court incorrectly applied the impossibility defense because Cam's failure to pay Cashman was not an unforeseen contingency and Mojave's performance was not impossible. It asserts that Mojave accepted the risk that Cashman would not be paid by securing a payment bond. Further, Cashman argues that Mojave did not argue impossibility at trial, nor did it present any evidence to the lower court to prove that its performance, i.e., paying Cashman, was impossible.

This court will not set aside a district court's factual findings unless the findings are not "supported by substantial evidence." *Mason-McDuffie Real Estate, Inc. v. Villa Fiore Dev., LLC*, 130 Nev., Adv. Op. 83, 335 P.3d 211, 213 (2014). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* at 214 (internal quotations omitted).

In *Nebaco, Inc. v. Riverview Realty Co., Inc.*, 87 Nev. 55, 57, 482 P.2d 305, 307 (1971), this court stated Nevada's rule for the defense of impossibility in contract actions:

> Generally, the defense of impossibility is available to a promisor where his performance is made impossible or highly impractical by the occurrence of unforeseen contingencies, but if the unforeseen contingency is one which the promisor should have foreseen, and for which he should have provided, this defense is unavailable to him.

(Citation omitted.) The Restatement (Second) of Contracts § 261 cmt. b (Am. Law Inst. 1981) explains that "[i]n order for a supervening event to discharge a duty under this Section, the non-occurrence of that event must have been a basic assumption on which both parties made the contract." (Internal quotations omitted.)

Although Mojave raised impossibility or impracticability as an affirmative defense in its answer, it did not present *any* evidence at all at trial that paying Cashman was impossible or impracticable or that Carvalho's failure to tender proper payment to Cashman was "unforeseen." *See Nebaco*, 87 Nev. at 57, 482 P.2d at 307; *see also Elliott v. Mallory Elec. Corp.*, 93 Nev. 580, 585, 571 P.2d 397, 400 (1977) (implying—in the context of a tort action where a stolen vehicle was operated negligently resulting in damages to a third party—that theft is foreseeable). Mojave obviously finds paying Cashman's lien unappealing because of the amount involved and because it previously paid Cam, which was supposed to pay Cashman. Regardless, Mojave's performance cannot be considered impossible or impracticable merely because it would be unappealing. Therefore, Mojave did not present substantial evidence that its performance was impossible or impracticable and the district court's finding must be set aside.

*Whether the district court's preliminary injunction requiring Cashman to provide codes is moot and, if so, whether this court should nonetheless consider this issue pursuant to the exception to the doctrine of mootness*

The respondents filed a motion for mandatory injunction to procure codes and requested that the district court order Cashman to install certain codes necessary for the backup power systems to function. Following a hearing, the district court found that the city could suffer immediate or irreparable damage if Cashman did not install the codes and ordered Cashman to do so. The district court subsequently granted Cashman's motion to stay the preliminary injunction. In its order following the bench trial, the district court awarded Cashman $86,600 for unjust enrichment "as long as Cashman provides, implements, and actually puts in the codes at issue."

Cashman argues that the district court erred when it issued a preliminary injunction for the respondents. However, Cashman argues the district court's injunction is now moot because the lower court determined that Cashman reasonably terminated its performance under the contract when Cashman was not paid. Cashman also claims that the district court did not order it to provide the codes; instead, the court ordered Cashman to provide the codes *if* it accepted the $86,600 payment from Mojave.

Generally, this court will not decide moot cases. *NCAA v. Univ. of Nev., Reno*, 97 Nev. 56, 58, 624 P.2d 10, 11 (1981). A case is moot if it "seeks to determine an abstract question which does not rest upon existing facts or rights." *Id.* Mootness is a question of justiciability. *Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010). The dispute must continue through all of the controversy's phases. *Id.* A case may become moot due to successive occurrences despite the existence

SUPREME COURT
OF
NEVADA

(O) 1947A

18

of a "live controversy" at the beginning of the litigation. *Id.* However, this court may consider an issue that "involves a matter of widespread importance that is capable of repetition, yet evading review." *Id.* The party seeking to overcome mootness must prove "that (1) the duration of the challenged action is relatively short, (2) there is a likelihood that a similar issue will arise in the future, and (3) the matter is important." *Bisch v. Las Vegas Metro. Police Dep't*, 129 Nev. 328, 334-35, 302 P.3d 1108, 1113 (2013).

As Cashman concedes, the district court's preliminary injunction is moot, as is its order staying the preliminary injunction. The district court's findings of fact and conclusions of law supplant the previous orders, and neither party argues that this court should review the lower court's decision based upon an exception to the mootness doctrine. Even if this court were to decide that the district court abused its discretion when it issued the preliminary injunction, neither party's rights would be affected. Accordingly, we decline to consider this issue.

Cashman's secondary argument that the district court's order only requires it to input the codes *if* it accepts the $86,600 in escrow is not persuasive. The district court specifically "award[ed] Cashman the entire amount remaining in the escrow account, $86,600, on its Fifteenth Cause of Action to be paid after Cashman installs the codes." We conclude that no ambiguity exists in the court's order and receipt of the money in exchange for entering the codes is not left to Cashman's discretion. According to the plain wording of the order, Cashman must enter the codes and, upon doing so, the amount in escrow must be released to Cashman. The order simply indicates the sequence in which the two

events must take place; the order does not create an "if/then" scenario. Thus, based on the district court's order, Cashman must install the codes.

## CONCLUSION

Accordingly, we reverse the district court's judgment and post-judgment order denying Cashman's motion for attorney fees and costs, and we remand this matter to the district court to recalculate Mojave's liability to Cashman in a manner consistent with this opinion.

_____, J.
Cherry

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A